[No. B207861. Second Dist., Div. Five. Aug. 19, 2009.]

THE CAPITAL GOLD GROUP, INC., Plaintiff, Cross-defendant and Appellant, v.
STEPHEN T. NORTIER et al., Defendants, Cross-complainants and Respondents.

## Counsel

Skousen Law, Robert James Skousen, James Allen and Cindy Tran for Plaintiff, Cross-defendant and Appellant.

No appearance for Defendants, Cross-complainants and Respondents.

## Opinion

**KRIEGLER, J.**—Plaintiff was a Nevada corporation duly qualified to transact intrastate business in California when it filed this action in California. Defendants cross-complained against plaintiff. While the action was pending, plaintiff converted to a Delaware corporation, changed its name, and obtained a new certificate of qualification to transact intrastate business in California. The trial court granted defendants' motion to strike the complaint and all responsive pleadings filed after the date of conversion on the ground that plaintiff failed to comply with the conversion requirements set forth in Corporations Code section 1157[1] or to notify the court and California's Secretary of State of the corporate changes. The court entered judgment in favor of defendants on the cross-complaint.

On appeal, plaintiff contends the trial court abused its discretion in striking plaintiff's pleadings because it was a corporation in good standing in its home state, as well as in full compliance with California laws regulating the transaction of business by foreign corporations. We conclude that plaintiff had the capacity to maintain pending actions under Nevada and Delaware laws, plaintiff was duly qualified to transact intrastate business in California, and section 1157 does not apply to the conversion of a foreign corporation to another foreign business entity. Therefore, we reverse.

### FACTS AND PROCEDURAL BACKGROUND

Plaintiff, cross-defendant, and appellant The Capital Gold Group, Inc. (TCGG), was incorporated in Nevada on October 23, 2003. In January 2006,

---

[1] All statutory references are to the Corporations Code unless otherwise indicated.

TCGG filed a statement and designation with California's Secretary of State, providing information required for service of process and stating that it was a corporation existing under the laws of Nevada. The Secretary of State issued a certificate of qualification to TCGG allowing the corporation to transact intrastate business (No. C2850275).

On January 23, 2007, TCGG filed a complaint against defendants, cross-complainants, and respondents Stephen T. Nortier, Michael Thomas Media Group, LLC, and Michael Thomas Promotions, L.L.C. (collectively MTM), for conversion, fraud, negligent misrepresentation, and declaratory relief concerning media advertisements that MTM had arranged.

On May 3, 2007, TCGG filed a certificate of conversion with Delaware's Secretary of State to convert the Nevada corporation named TCGG to a Delaware corporation named Capital Gold Group, Inc. (CGG). On May 11, 2007, the State of Delaware certified the conversion of the corporation and the name change. On May 14, 2007, articles of conversion were filed with Nevada's Secretary of State converting "The Capital Gold Group, Inc., a Nevada corporation," into "Capital Gold Group, Inc., a Delaware corporation."

On May 15, 2007, MTM filed a cross-complaint against TCGG and its president, Jonathan Rose, for various causes of action, including breach of contract, accounting, and misrepresentation. On June 15, 2007, TCGG filed an answer to the cross-complaint.

On September 5, 2007, CGG filed a statement and declaration with California's Secretary of State stating that it is a corporation organized and existing under the laws of Delaware. The Secretary of State issued a certificate of qualification authorizing CGG to transact business in the State of California (No. C3045276).

Forbes Media L.L.C. filed a complaint in intervention against MTM, TCGG, and Rose.

MTM's counsel discovered that multiple corporations with similar names were qualified to do business in California and investigated TCGG's corporate status. On January 10, 2008, MTM filed a motion to strike the complaint and activities of TCGG on the ground that it had not been a corporation in good standing in Nevada since May 15, 2007, had not filed a notice of name change with California's Secretary of State, had not filed a notice of conversion under section 1157, and had not provided a name change or substituted parties to the trial court or opposing counsel in the pending action. MTM also filed a motion requesting leave to amend the cross-complaint to

add CGG and Capital Gold Group Holdings, Inc., a Delaware corporation, as cross-defendants. MTM attached a proposed amended cross-complaint.

On January 16, 2008, TCGG opposed the motion to strike on the ground that it was a corporation in good standing authorized to transact business in California. In support of the opposition, TCGG submitted a certification from the Secretary of State of Delaware that CGG was in good standing and had a legal existence.

A hearing was held on January 22, 2008. The trial court noted that TCGG had done nothing to inform the court or opposing counsel of the change in the state of incorporation and the successor status of CGG. TCGG had not complied with section 1157. TCGG had not informed California's Secretary of State that it changed its state of incorporation and changed its name, but that the Delaware corporation was the legal successor burdened with the rights and responsibilities of the former Nevada corporation and with a slightly different name. Instead, the newly named entity filed with California's Secretary of State to qualify to do business as a new company, not a successor. As a result, the court found TCGG had lost its status to litigate before the court on May 3, 2007, and had not yet taken steps to restore itself, even in the face of the pending motion.

The trial court granted MTM's motion for leave to amend its cross-complaint and deemed the amended cross-complaint served and filed as of January 22, 2008. The court dismissed the complaint without prejudice "nunc pro tunc back to May 3, 2007." The court struck all pleadings filed by TCGG after May 3, 2007, based on the court's conclusion that the entity lacked legal capacity to litigate. Sanctions awards in favor of TCGG made after May 3, 2007, were voided and ordered to be reimbursed to the paying parties. The court issued an order to show cause regarding entry of default of TCGG set for hearing on March 3, 2008.

On January 29, 2008, TCGG filed a certificate surrendering its authority to transact intrastate business in California. On February 8, 2008, TCGG filed a motion for reconsideration pursuant to Code of Civil Procedure section 1008 and an order pursuant to Code of Civil Procedure section 473, subdivision (a), to correct the party name to read "Capital Gold Group, Inc., a Delaware corporation" in all pleadings where the name "The Capital Gold Group, Inc., a Nevada corporation" formerly appeared. TCGG argued that the complaint should not have been dismissed because the corporation was qualified to do business in California and had obtained a certificate of qualification prior to commencing the action. Even if the corporation were not in compliance with California law, the action should have been stayed to allow it to come into compliance and validate the prior proceedings.

On February 26, 2008, the trial court entered a judgment in favor of MTM. The judgment stated that MTM's motion to strike was heard on January 22, 2008, and the matter had been submitted for decision. The court found that the June 15, 2007 answer filed by TCGG to the May 15, 2007 cross-complaint had been stricken. The court ordered that TCGG take nothing on the May 15, 2007 cross-complaint and judgment be entered against TCGG in favor of MTM. On March 3, 2008, the court discharged the order to show cause regarding the entry of default as to TCGG.

On March 6, 2008, MTM filed an opposition to the motion for reconsideration on the ground that the trial court lost jurisdiction to rule on the pending motion upon the entry of the February 26, 2008 judgment. In addition, MTM argued that the Delaware corporation was a separate entity and therefore a new party, rather than a name change, and there was no indication that corporate formalities had been observed to convert the corporate entity. MTM's counsel filed a motion to be relieved as counsel, which the court granted.

Forbes filed a response stating that it did not object to allowing the name correction, but requested an award of costs that Forbes had incurred as a result of TCGG's failure to inform its creditors of the conversion.

TCGG filed a reply arguing that the motion for reconsideration was timely because the February 26, 2008 judgment referred to the superseded cross-complaint, MTM had never requested entry of default as to any cross-defendant, and no other judgment had been entered.

A hearing was held on March 17, 2008. The trial court denied the motion for reconsideration or relief under Code of Civil Procedure section 473, subdivision (a), without prejudice. The court found that TCGG had not shown a conversion recognized by California's Secretary of State providing the Delaware corporation was the legal successor to the Nevada corporation.

On March 17, 2008, TCGG filed a motion to set aside the January 22, 2008 order, the February 26, 2008 judgment, and grant a new trial. Neither MTM nor Forbes filed an opposition or appeared at a hearing on the motion on April 29, 2008. The trial court denied the motion for new trial.

On May 9, 2008, TCGG filed a notice of appeal from the January 22, 2008 order dismissing the complaint and striking the answer to the cross-complaint, the February 26, 2008 judgment in favor of MTM on the May 15, 2007 cross-complaint, the March 17, 2008 order denying the motion for reconsideration, and the April 29, 2008 order denying the motion for a new trial.

## DISCUSSION

*Standard of Review*

In granting a motion to strike made under Code of Civil Procedure section 435, the court may "[s]trike out all or any part of any pleading not drawn or filed in conformity with the laws of this state, a court rule, or an order of the court." (Code Civ. Proc., § 436, subd. (b).) "An order striking all or part of a pleading under Code of Civil Procedure section 435 et seq. is reviewed for abuse of discretion. [Citation.] This means that the reviewing court will disturb the ruling only upon a showing of a ' " 'clear case of abuse' " ' and a ' " 'miscarriage of justice.' " ' [Citations.] Discretion is abused only when, in its exercise, the trial court ' "exceed[ed] the bounds of reason, all of the circumstances before it being considered." ' [Citation.]" (*Quiroz v. Seventh Ave. Center* (2006) 140 Cal.App.4th 1256, 1282 [45 Cal.Rptr.3d 222].)

*Capacity to Maintain Pending Action*

TCGG contends that at all times, it has been a foreign corporation in good standing duly qualified to transact intrastate business in California, and therefore, the trial court abused its discretion by striking its pleadings. We agree.

### A. *Corporate Status Under Nevada and Delaware Laws*

■ "[T]he continuing legal existence of a corporation depends on the law of the state of incorporation." (*CM Record Corp. v. MCA Records, Inc.* (1985) 168 Cal.App.3d 965, 967 [214 Cal.Rptr. 409].) A corporation that lacks the capacity to sue in its home state based on a lack of corporate status, also lacks capacity to sue in California, because "it has no greater capacity to sue in California than in its home state." (*Id.* at p. 969.)

■ Under Nevada law, a Nevada corporation may convert to a foreign business entity under an approved conversion plan. (Nev. Rev. Stat. § 92A.105.)[2] The entity to be converted is considered the "constituent entity"

---

[2] Nevada Revised Statutes section 92A.105 provides: "1. Except as limited by NRS 78.411 to 78.444, inclusive, one domestic general partnership or one domestic entity, except a domestic nonprofit corporation, may convert into a domestic entity of a different type or a foreign entity if the plan of conversion is approved pursuant to the provisions of this chapter. [¶] 2. The plan of conversion must be in writing and set forth the: [¶] (a) Name of the constituent entity and the proposed name for the resulting entity; [¶] (b) Jurisdiction of the law that governs the constituent entity; [¶] (c) Jurisdiction of the law that will govern the resulting entity; [¶] (d) Terms and conditions of the conversion; [¶] (e) Manner and basis, if any, of converting the owner's interest or the interest of a partner in a general partnership of the constituent entity into owner's interests, rights of purchase and other securities in the resulting

(Nev. Rev. Stat. § 92A.015) and the entity that results from the conversion is called the "resulting entity" (Nev. Rev. Stat. § 92A.090). If the resulting entity is a foreign entity, the constituent entity delivers articles of conversion to Nevada's Secretary of State setting forth the name and jurisdiction of organization of the constituent entity and the resulting entity, that the conversion plan was adopted by the constituent entity in compliance with Nevada law, and the address of the resulting entity for service of process. (Nev. Rev. Stat. § 92A.205.)

When a conversion takes effect under Nevada law, "[t]he constituent entity is converted into the resulting entity and is governed by and subject to the law of the jurisdiction of the resulting entity." (Nev. Rev. Stat. § 92A.250, subd. (3)(a).) "The conversion is a continuation of the existence of the constituent entity." (Nev. Rev. Stat. § 92A.250, subd. (3)(b).) "The resulting entity has all the liabilities of the constituent entity." (Nev. Rev. Stat. § 92A.250, subd. (3)(d).) "The domestic constituent entity is not required to wind up its affairs, pay its liabilities, distribute its assets or dissolve, and the conversion is not deemed a dissolution of the domestic constituent entity." (Nev. Rev. Stat. § 92A.250, subd. (3)(h).) Significantly, "[a] proceeding pending against the constituent entity may be continued as if the conversion had not occurred or the resulting entity may be substituted in the proceeding for the constituent entity." (Nev. Rev. Stat. § 92A.250, subd. (3)(e).)

█ Delaware law allows a foreign corporation to convert to a Delaware corporation. (Del. Code Ann., tit. 8, § 265.)[3] The certificate of conversion

---

entity or cancelling such owner's interests in whole or in part; and [¶] (f) Full text of the charter documents of the resulting entity."

[3] Title 8, section 265 of the Delaware Code provides in pertinent part: "(a) As used in this section, the term 'other entity' means a limited liability company, statutory trust, business trust or association, real estate investment trust, common-law trust or any other unincorporated business including a partnership (whether general (including a limited liability partnership) or limited (including a limited liability limited partnership)), or a foreign corporation. [¶] (b) Any other entity may convert to a corporation of this State by complying with subsection (h) of this section and filing in the office of the Secretary of State: [¶] (1) A certificate of conversion to corporation that has been executed in accordance with subsection (i) of this section and filed in accordance with § 103 of this title; and [¶] (2) A certificate of incorporation that has been executed, acknowledged and filed in accordance with § 103 of this title. [¶] (c) The certificate of conversion to corporation shall state: [¶] (1) The date on which and jurisdiction where the other entity was first created, incorporated, formed or otherwise came into being and, if it has changed, its jurisdiction immediately prior to its conversion to a domestic corporation; [¶] (2) The name of the other entity immediately prior to the filing of the certificate of conversion to corporation; and [¶] (3) The name of the corporation as set forth in its certificate of incorporation filed in accordance with subsection (b) of this section. [¶] . . . [¶] (d) Upon the effective time of the certificate of conversion to corporation and the certificate of incorporation, the other entity shall be converted to a corporation of this State and the corporation shall thereafter be subject to all of the provisions of this title, except that notwithstanding § 106 of this title, the existence of the corporation shall be deemed to have commenced on the date the

must state the jurisdiction where, and the date on which, the other entity was incorporated, the name of the other entity immediately prior to the conversion, and the name of the Delaware corporation in the certificate of incorporation. (Del. Code Ann., tit. 8, § 265, subd. (c).)

When the conversion of a foreign corporation to a Delaware corporation takes effect under Delaware law, the corporation's existence is deemed to have commenced on the date that the foreign corporation commenced its existence in the jurisdiction where it was incorporated. (Del. Code Ann., tit. 8, § 265, subd. (d).) The conversion of a foreign corporation to a Delaware corporation does not affect "obligations or liabilities of the other entity incurred prior to its conversion to a [Delaware corporation] or the personal liability of any person incurred prior to such conversion." (Del. Code Ann., tit. 8, § 265, subd. (e).)

---

other entity commenced its existence in the jurisdiction in which the other entity was first created, formed, incorporated or otherwise came into being. [¶] (e) The conversion of any other entity to a corporation of this State shall not be deemed to affect any obligations or liabilities of the other entity incurred prior to its conversion to a corporation of this State or the personal liability of any person incurred prior to such conversion. [¶] (f) When an other entity has been converted to a corporation of this State pursuant to this section, the corporation of this State shall, for all purposes of the laws of the State of Delaware, be deemed to be the same entity as the converting other entity. When any conversion shall have become effective under this section, for all purposes of the laws of the State of Delaware, all of the rights, privileges and powers of the other entity that has converted, and all property, real, personal and mixed, and all debts due to such other entity, as well as all other things and causes of action belonging to such other entity, shall remain vested in the domestic corporation to which such other entity has converted and shall be the property of such domestic corporation and the title to any real property vested by deed or otherwise in such other entity shall not revert or be in any way impaired by reason of this chapter; but all rights of creditors and all liens upon any property of such other entity shall be preserved unimpaired, and all debts, liabilities and duties of the other entity that has converted shall remain attached to the corporation of this State to which such other entity has converted, and may be enforced against it to the same extent as if said debts, liabilities and duties had originally been incurred or contracted by it in its capacity as a corporation of this State. The rights, privileges, powers and interests in property of the other entity, as well as the debts, liabilities and duties of the other entity, shall not be deemed, as a consequence of the conversion, to have been transferred to the domestic corporation to which such other entity has converted for any purpose of the laws of the State of Delaware. [¶] (g) Unless otherwise agreed for all purposes of the laws of the State of Delaware or as required under applicable non-Delaware law, the converting other entity shall not be required to wind up its affairs or pay its liabilities and distribute its assets, and the conversion shall not be deemed to constitute a dissolution of such other entity and shall constitute a continuation of the existence of the converting other entity in the form of a corporation of this State. [¶] (h) Prior to filing a certificate of conversion to corporation with the office of the Secretary of State, the conversion shall be approved in the manner provided for by the document, instrument, agreement or other writing, as the case may be, governing the internal affairs of the other entity and the conduct of its business or by applicable law, as appropriate, and a certificate of incorporation shall be approved by the same authorization required to approve the conversion."

■ When a foreign corporation converts to a Delaware corporation pursuant to Delaware law, the resulting Delaware corporation is "deemed to be the same entity" as the converting foreign corporation. (Del. Code Ann., tit. 8, § 265, subd. (f).) When the conversion takes effect under Delaware law, the foreign corporation's rights, privileges, powers, property interests and causes of action "remain vested" in the Delaware corporation to which the foreign corporation has converted and are not considered to have been transferred to the Delaware corporation. (Del. Code Ann., tit. 8, § 265, subd. (f).) The converting foreign corporation is not required to wind up its affairs or pay its liabilities and distribute its assets, and the conversion is not deemed to constitute a dissolution of the foreign corporation. (Del. Code Ann., tit. 8, § 265, subd. (g).)

Under the laws of Nevada and Delaware, the Nevada corporation TCGG was authorized to convert to the Delaware corporation CGG. The corporation was never suspended, revoked, or dissolved. The corporation's action and the cross-complaint against the corporation could have been continued in the name of TCGG, because under Delaware law, TCGG is deemed to be the same entity as CGG, deemed to have come into existence on the date the Nevada corporation was incorporated, and has all of the same rights, powers, property interests, causes of action, debts, liabilities, and duties. It is clear that under the laws of Nevada and Delaware, TCGG had the capacity to pursue the action against MTM after the conversion.[4]

B. *Corporation Code Section 1157*

TCGG contends that it was not required to satisfy the conversion requirements set forth in section 1157, because section 1157 does not apply to a foreign corporation's conversion to another foreign corporation. This is correct.

■ Section 1157 refers to a business entity other than a corporation as an "other business entity." Section 1157 provides that "an other business entity or a foreign other business entity or a foreign corporation" may be converted into "a corporation" pursuant to the requirements of Chapter 11.5.[5] It is clear

---

[4] California law provides that when an entity converts to another entity under California law, "[a]ny action or proceeding pending by or against the converting entity or converting corporation may be continued against the converted entity or converted corporation as if the conversion had not occurred." (§ 1158, subd. (b)(4).)

[5] Section 1157 provides: "(a) An other business entity or a foreign other business entity or a foreign corporation may be converted into a corporation pursuant to this chapter only if the converting entity is authorized by the laws under which it is organized to effect the conversion. [¶] (b) An other business entity or a foreign other business entity or a foreign corporation that desires to convert into a corporation shall approve a plan of conversion or other instrument as is required to be approved to effect the conversion pursuant to the laws under which that entity

from the statutory language that under section 1157, "a corporation" is a domestic corporation organized under the laws of California and does not include a foreign corporation. When the Legislature intended to include foreign business entities or foreign corporations in section 1157, it expressly used the terms "foreign other business entity" and "foreign corporation." If the term "other business entity" encompassed both domestic and foreign business entities, the following reference to "foreign other business entit[ies]" would be unnecessary and redundant. By implication, where the statute simply refers to "an other business entity" or "a corporation," it refers only to domestic entities.

In addition, the statutory scheme makes it clear that section 1157 applies solely to conversions to domestic corporations. A foreign corporation that files for conversion under section 1157 automatically surrenders its right to transact intrastate business. This provision makes sense if the foreign corporation is converting to a domestic corporation. However, if a foreign corporation had to meet the requirements of section 1157 to convert into another foreign corporation, then the statute would need to provide for a new

---

is organized. [¶] (c) The conversion of an other business entity or a foreign other business entity or a foreign corporation shall be approved by the number or percentage of the partners, members, shareholders, or other holders of interest of the converting entity that is required by the laws under which that entity is organized, or a greater or lesser percentage as may be set forth in the converting entity's partnership agreement, articles of organization, operating agreement, articles of incorporation, or other governing document in accordance with applicable laws. [¶] (d) The conversion by an other business entity or a foreign other business entity or a foreign corporation shall be effective under this chapter upon the filing with the Secretary of State of the articles of incorporation of the converted corporation, containing a statement of conversion that complies with subdivision (e). [¶] (e) A statement of conversion of an entity converting into a corporation pursuant to this chapter shall set forth all of the following: [¶] (1) The name, form, and jurisdiction of organization of the converting entity. [¶] (2) The Secretary of State's file number, if any, of the converting entity. [¶] (3) If the converting entity is a foreign other business entity or a foreign corporation, the statement of conversion shall contain the following: [¶] (A) A statement that the converting entity is authorized to effect the conversion by the laws under which it is organized. [¶] (B) A statement that the converting entity has approved a plan of conversion or other instrument as is required to be approved to effect the conversion pursuant to the laws under which the converting entity is organized. [¶] (C) A statement that the conversion has been approved by the number or percentage of the partners, members, shareholders, or other holders of interest of the converting entity that is required by the laws under which that entity is organized, or a greater or lesser percentage as may be set forth in the converting entity's partnership agreement, articles of organization, operating agreement, articles of incorporation, or other governing document in accordance with applicable laws. [¶] (f) The filing with the Secretary of State of articles of incorporation containing a statement pursuant to subdivision (e) shall have the effect of the filing of a certificate of cancellation by a converting foreign limited liability company or foreign limited partnership, and no converting foreign limited liability company or foreign limited partnership that has made the filing is required to file a certificate of cancellation under Section 15696, 15909.07, or 17455 as a result of that conversion. If a converting entity is a foreign corporation qualified to transact business in this state, the foreign corporation shall, by virtue of the filing, automatically surrender its right to transact intrastate business."

certificate of qualification to issue to the converted corporation. We find that the requirements of section 1157 do not apply to a foreign corporation's conversion to another foreign corporation.

### C. *Capacity Under California Law*

In the trial court, MTM argued that TCGG had not properly notified the court or California's Secretary of State of its corporate changes. TCGG contends that it was in full compliance with California law. We agree with TCGG.

■ A foreign corporation must obtain a certificate of qualification from California's Secretary of State in order to transact intrastate business. (§ 2105, subd. (a).) To obtain the certificate, the corporation must file a statement providing its name, state of incorporation, address of its principal executive office, address of its principal office in California, agent for service of process in California and consent to service of process. (*Ibid.*) It must attach a certificate from the state of incorporation stating that the corporation is an existing corporation in good standing in that state. (*Id.*, subd. (b).)

"The purpose of the certificate of qualification is to facilitate service of process and to protect against state tax evasion. [Citation.] The qualification statute assures responsible and fair dealing by foreign corporations and equalizes the regulation of foreign and domestic corporations. [Citation.] The qualification statute is enforced, in part, by temporarily halting lawsuits. The objective of the lawsuit suspension enforcement mechanism is to encourage qualification, rather than to penalize the failure to qualify earlier. [¶] The qualification statute also serves the purpose of preventing tax evasion by foreign corporations, but it is not primarily a taxation measure." (*United Medical Management Ltd. v. Gatto* (1996) 49 Cal.App.4th 1732, 1741 [57 Cal.Rptr.2d 600].)

■ A foreign corporation is subject to a number of penalties for transacting intrastate business without qualifying. (§ 2203.) A foreign corporation which transacts intrastate business without complying with section 2105 cannot maintain an action commenced in a California court prior to compliance with section 2105 until the corporation has obtained a certificate of qualification, paid fees and a penalty, and filed receipts with the court in which the action is pending showing payment of fees, penalties, and taxes for the period during which it transacted intrastate business. (§ 2203, subd. (c).) However, section 2203, subdivision (c) has no application to an action by a foreign corporation qualified to transact intrastate business in California at the time the action was commenced. (*United Medical Management Ltd. v. Gatto, supra*, 49 Cal.App.4th at p. 1740.) In the instant case, TCGG was duly

qualified to transact business in California when it instituted the instant action, and therefore, no abatement of the action under section 2203 was required.

■ Section 2107 sets forth procedures to notify California's Secretary of State of certain corporate changes. When a foreign corporation qualified to transact intrastate business changes its name, it must file an amended statement setting forth the name relinquished as well as the new name assumed. (§ 2107, subd. (a).) The corporation must submit with the amended statement a certificate from the state of incorporation stating that the name change was made in accordance with the laws of that state. (*Ibid.*) Upon filing of the amended statement, the Secretary of State issues a new certificate of qualification. (*Ibid.*) If a foreign corporation qualified to transact intrastate business simply changes the address of its principal California office, the address of its principal executive office, or its agent for the service of process, or if the stated address of any natural person designated as agent is changed, the statement filed by the corporation pursuant to section 2117 supersedes the prior statement. (§ 2107, subd. (d).) In this case, however, it would have been incorrect to file an amended statement setting forth the corporation's new name, because the amended statement would have continued to show the corporation as a Nevada corporation. None of the procedures under section 2107 provide notification of a change in the state of incorporation.

No statute provides for notification to the Secretary of State of a change in the state of incorporation after a foreign corporation converts to another foreign corporation. (Cf. § 2113 [filing a merger agreement pursuant to § 1103 for a disappearing foreign corporation qualified to transact intrastate business or filing by a foreign corporation qualified to transact intrastate business of an organizational document containing a statement of conversion under § 15677.8, 15911.08, 16908, or 17540.8, constitutes the surrender by the foreign corporation of its right to engage in intrastate business within this state; otherwise, a foreign corporation qualified to transact intrastate business shall file a certificate of surrender under § 2112 upon its merger into another foreign corporation].) Obtaining a new certificate of qualification was a reasonable attempt to comply with the spirit of the qualification statutes.

■ "[A] foreign corporation which has qualified to transact intrastate business may surrender its right to engage in that business within this state by filing a certificate of surrender" pursuant to section 2112. The certificate must state the name of the corporation as shown on the records of the Secretary of State, the state of incorporation, revoke the designation of agent for service of process, surrender its authority to transact intrastate business, consent to service of process on the Secretary of State in any action against it upon any liability or obligation incurred within this state prior to the filing of the certificate of withdrawal, and a mailing address. (§ 2112.)

■ Although TCGG did not immediately file a certificate of surrender of TCGG's right to engage in intrastate business, this did not affect its ability to maintain the pending action. At all times, plaintiff was qualified to transact business in California and this right was never suspended or revoked. Therefore, the trial court erred by striking TCGG's complaint and other pleadings, and ordering the return of sanctions payments.

## DISPOSITION

The February 26, 2008 judgment is reversed and the January 22, 2008 order granting the motion to strike and dismissing the complaint is reversed. The trial court is directed to enter a new and different order denying the motion to strike. The Capital Gold Group, Inc., is awarded its costs on appeal.

Turner, P. J., and Armstrong, J., concurred.