Filed 11/6/13  GoMirror v. Brockstar CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| GOMIRROR, LLC, | |
| Plaintiff and Respondent, | G047862 |
| v. | (Super. Ct. No. 30-2011-00457099) |
| BROCKSTAR, LTD. et al., | O P I N I O N |
| Defendants and Appellants. | |

Appeal from a judgment of the Superior Court of Orange County, David R. Chaffee, Judge.  Affirmed.

Raymond N. Haynes for Defendants and Appellants.

Marianne Milligan for Plaintiff and Respondent.

\*          \*          \*

Brockstar Ltd., Brockstar Groups of Companies, Brockstar Financial Services, Inc., and Brian N. Willis (collectively, Brockstar) appeal from a judgment on breach of contract and fraud causes of action in favor of GoMirror, LLC, for falsely inducing GoMirror to provide successively greater sums of earnest money and then reneging on its promise to obtain financing for GoMirror to bring its novel women's cosmetics accessory to market. Brockstar contends GoMirror, a Texas corporation, lacked capacity to sue because it failed to register as a company conducting business in California. Brockstar also asserts "[p]laintiff's claim for lost profits was too speculative to receive such an award as a matter of law" and that "[t]he amount of lost profits awarded was not supported by substantial evidence" because "[t]here is simply no evidentiary support for how the court made [its] determination." As we explain, Brockstar's challenges are without merit, and we therefore we affirm the judgment.

I

FACTUAL AND PROCEDURAL BACKGROUND

Consistent with the standard of review, we set out the facts in the light most favorable to the judgment. (See, e.g., *Delgado v. Trax Bar & Grill* (2005) 36 Cal.4th 224, 229.) Christian von Glasow, owner and chief executive of GoMirror and a former marketing specialist for Proctor & Gamble and other companies developing women's cosmetic products or targeting female consumers, conceived in 1998 the idea for a cosmetic compact mirror with a flexible, portable mount. Believing it was ideal for use "on the go," including in automobiles, he patented the product in 2001, but put its further development on hold through divorce proceedings in 2002 and 2003. He eventually returned to his GoMirror project in 2008 when he met with consultants in the field of direct response television (DRTV) about marketing and selling the GoMirror compact

2

through a television sales campaign. The DRTV campaign would cost $1.4 million, not including expenses for an initial run of at least 3500 units of the GoMirror product. Von Glasow obtained $150,000 in funding for the necessary tools and molds to produce the first 5,000 GoMirror units, which he stored in San Bernardino County, distributing approximately 500 units in product placements and online sales overseas.

Through a mutual friend, von Glasow turned to Willis and his Brockstar companies to finance the DRTV campaign. Von Glasow met with Willis in California in September 2009, demonstrated the product and discussed his business plan, which gained Willis as an enthusiastic supporter. Willis expressed his confidence the campaign would be very profitable. In subsequent discussions, Willis agreed Brockstar would fund a $1.4 million loan for the DRTV campaign, contingent on GoMirror paying Brockstar $20,000 in "bank fees" and other costs.

Von Glasow turned to a friend in England, John Milman, for the $20,000, which Willis accepted, cautioning that the financing would be arranged in a "piggyback[]" fashion on other Brockstar transactions, implying there might be some delay. Milman traveled to California to deposit the $20,000 and meet with Willis, who confirmed "he thought the business plan was good." Six weeks later, Willis demanded an additional $40,000 to obtain the financing, which Milman again provided, and periodically thereafter Willis required additional funds of $25,000 and $65,000, bringing the total Milman gave Willis on GoMirror's behalf to $150,000. In each "Commitment Letter" memorializing each of Milman's deposits for GoMirror, Brockstar acknowledged: "All deposits are corporately guaranteed and to be considered fully refundable in case of nonperformance by the lender, for any reason, in delivery of the loan." Each commitment letter also contained a confidentiality provision preventing GoMirror from

3

seeking alternate funding, effectively giving Brockstar exclusive funding rights under the loan contract.

After the delays stretched into June 2010 with no funding near at hand, von Glasow asked Willis to return the $150,000. Willis responded that because Milman had deposited the funds, he would only refund them to Milman, but he similarly rebuffed Milman in an e-mail, writing: "Dear John, my apologies for not responding to your last communication. Although I greatly appreciate your concerns, your deal is by and between GoMirror and [von Glasow], not between Brockstar or myself." To eliminate any possible confusion, Milman executed an assignment of the $150,000 to GoMirror, which he provided to Willis to no avail, who refused to return the funds.

In March 2011, GoMirror filed this lawsuit and, after a three-day court trial that included ample evidence of GoMirror's lost profits based on Brockstar's failure to fund GoMirror's planned launch, the trial court ruled in favor of GoMirror on its fraud and breach of contract causes of action. The court summarized Brockstar's conduct in keeping GoMirror's $150,000 and failing to provide the promised funding as "a classic case of a con game." The trial court awarded GoMirror over $800,000 in damages, which included the $150,000 deposit plus almost $40,000 in interest on that sum, $600,000 in lost profits, and around $50,000 in other damages. Brockstar now appeals.

II

DISCUSSION

A.    *Capacity to Sue*

Brockstar contends the trial court erred by rejecting its request to dismiss GoMirror's lawsuit because GoMirror failed to register with the Secretary of State to conduct business in California. (Corp. Code, § 2203, subd. (c) [foreign corporation that

4

"transacts intrastate business without" the requisite registration "shall not maintain any action or proceeding upon any intrastate business so transacted"]; see, e.g., *The Capital Gold Group, Inc. v. Nortier* (2009) 176 Cal.App.4th 1119, 1132.) The litigation bar arises when the foreign corporation engages in "repeated and successive transactions of its business in this state" without registering, but the bar does not apply to "interstate or foreign commerce" consummated outside California. (Corp. Code, § 191, subd. (a); *Thorner v. Selective Cam Transmission Co.* (1960) 180 Cal.App.2d 89.)

The Legislature has identified some activities that do not amount to transacting intrastate business and therefore do not trigger the litigation ban, including for example: (1) the mere act of filing suit or defending any action or proceeding; (2) internal affairs including board or shareholder meetings; (3) maintaining bank accounts; (4) maintaining offices for securities transactions; (5) conducting sales through independent contractors; (6) soliciting or procuring orders; (7) creating evidence of debt or mortgages, liens or security interests on real or personal property; and (8) conducting isolated transactions. (Corp. Code, § 191, subd. (c).)

A defendant seeking dismissal bears the burden to establish the plaintiff's lack of capacity to sue based on a failure to register, corporate suspension, or other defects. (*Color-Vue, Inc. v. Abrams* (1996) 44 Cal.App.4th 1599, 1604 (*Color-Vue*.) We review the trial court's ruling under the deferential substantial evidence standard. (See, e.g., *Hurst v. Buczek Enterprises, LLC* (N.D. Cal. 2012) 870 F.Supp.2d 810, 819 (*Hurst*) [whether corporation transacts intrastate business is "committed to the 'peculiar facts' of each case"].)

Defendant's challenge fails for several reasons. First, unlike lack of standing, a plaintiff's incapacity to sue is not an incurably fatal defect that may be raised

5

at any time. (*Color-Vue*, *supra*, 44 Cal.App.4th at pp. 1603-1604; see *United Medical Management Ltd. v. Gatto* (1996) 49 Cal.App.4th 1732, 1740 [defendant successfully asserting incapacity only gains stay "to permit the foreign corporation to comply" and, if it does not, dismissal is "without prejudice"].) As an affirmative defense, incapacity requires a plea in abatement that "'must be raised at the earliest opportunity or it is waived. . . . The proper time to raise a plea in abatement is in the original answer or by demurrer at the time of the answer." (*Color-Vue*, at p. 1604, original ellipsis.) Once forfeited, the defense does not revive except, for example, "[w]here . . . the [corporate] suspension occurred after the time to demur or answer had passed" (*id.* at p. 1604, fn. 5), or in "unusual circumstance[s]" such as a suspended corporation "announc[ing] that it does not intend to pay its delinquent taxes . . . ." (*Id.* at p. 1605.)

Here, Brockstar did not challenge GoMirror's capacity to sue until far too late, long after it filed its answer without any abatement plea. Brockstar pointed to no unusual circumstances warranting forfeiture relief: Willis of course knew of his California interactions with GoMirror, a Texas corporation, but failed to file a demurrer or answer pleading abatement for lack of registration or any other reason. Brockstar did not raise the capacity issue until the first day of trial, well after ample opportunity in discovery to investigate whether GoMirror engaged in intrastate commerce. Forfeiture therefore precludes Brockstar's belated capacity challenge.

Second, Brockstar also forfeits the issue on appeal by failing to provide or explain any factual basis for his incapacity claim. Brockstar simply asserts GoMirror "was *definitely* transacting business in California" (italics added), but does not say how. Brockstar complains that the trial court required it "to provide evidence that GoMirror was doing business in California" to meet Brockstar's burden as the party seeking

dismissal, "and then, *when such evidence was provided*, simply ignored it, and allowed the case to go forward." (Italics added.) But Brockstar makes no effort to identify the evidence it claimed would satisfy its burden. Brockstar cites, without summary or explanation, a range of pages in the record, but it is not our responsibility to develop from a bare record reference a reasoned argument for reversal. To the contrary, we presume the judgment was correct (*Denham v. Superior Court* (1970) 2 Cal.3d 557, 566 (*Denham*) ), and it is always the appellant's burden to demonstrate error (*Boyle v. CertainTeed Corp.* (2006) 137 Cal.App.4th 645, 649-650 (*Boyle*)) with specific arguments under specific headings marshalling specific facts (Cal. Rules of Court, rule 8.204(a)(1)(B) & (C)).

In any event, even disregarding Brockstar's forfeiture in the trial court and on appeal, its challenge also fails on the merits. The closest Brockstar comes on appeal to identifying GoMirror's alleged pattern of intrastate business activity necessitating registration is to observe that "this whole transaction . . . occurred in California." But a single instance of transacting business is not enough. (Corp. Code, §§ 191, subd. (a), 192, subd. (b)(8); see, e.g., *Equitable T. Co. v. Western L. & P. Co.* (1918) 38 Cal.App. 535 [acting as trustee in one instance is not "carrying on business" in the state].) Moreover, one continuing attempt to secure funding from Brockstar did not demonstrate GoMirror's everyday "ordinary business" consisted of transacting loans, requiring registration to engage in that activity. (*W.W. Kimball Co. v. Read* (1919) 43 Cal.App. 342, 345 [taking assignment of a single piano sales contract did not require Illinois piano company to register as intrastate financier]; see also *West Publishing Co. v. Superior Court* (1942) 20 Cal.2d 720, 731 [isolated business transaction and mere solicitation of business, including advertising and demonstrating products, does not amount to "doing

7

business"].)  Accordingly, GoMirror's lone agreement with Brockstar, which Brockstar failed to fulfill, did not require GoMirror to register in California or face dismissal of its lawsuit, thereby inoculating Brockstar for its breach of contract.  For all the foregoing reasons, the trial court did not err in rejecting Brockstar's request for dismissal.

B.      *Lost Profits*

Brockstar challenges the lost profit damages the trial court assessed after concluding Brockstar reneged on its promise to finance GoMirror's product launch. Brockstar identifies in the subheadings of its opening brief two specific challenges.  First, Brockstar claims that lost profits for a new business are too speculative as a matter of law and therefore could not be awarded for GoMirror's fledgling business.  As Brockstar phrases it:  "Plaintiff's claim for lost profits was too speculative to receive such an award as a matter of law."  Second, Brockstar contends no evidence supported the *manner in which* the trial court calculated $600,000 as the appropriate sum compensating GoMirror for lost profits.   Specifically, Brockstar asserts "[t]he amount of lost profits awarded was not supported by substantial evidence" because "[t]here is simply no evidentiary support for how the court made [its] determination."  These challenges fail.

First, to the extent Brockstar suggests new businesses may never be awarded lost profits, Brockstar is wrong on the law.  Brockstar asserts that because "GoMirror did not prove that it ever tried to *begin selling* the product for which it sought financing from Brockstar" (italics added), California law therefore precluded GoMirror

8

as a "new business" from recovering lost profits.[1]  Brockstar overstates its case and misconstrues the authority on which it relies.

Specifically, Brockstar miscites a passage in *Resort Video* for the sweeping proposition that "'if a business is new, it is improper to award damages for loss of profits because the absence of income and expense experience renders anticipated profits too speculative to meet the legal standard of reasonable certainty necessary to support an award of such damage.  [Citations.]'" (*Resort Video*, *supra*, 35 Cal.App.4th at p. 1698.) Brockstar neglects to mention, however, that in the same paragraph *Resort Video* acknowledges exceptions exist in which "[u]nestablished businesses" may recover lost profits.  (*Ibid.*)  Indeed, contrary to Brockstar's argument that "for years, case law has held that damages for 'lost profit' are too speculative" for new businesses to recover, the law has recognized for decades that a new business robbed of success may recover lost profit damages and that the prospects of success are a fact question.  (*S. Jon Kreedman & Co. v. Meyers Bros. Parking-Western Corp.* (1976) 58 Cal.App.3d 173, 185 (*S. Jon Kreedman*) [upholding lost profit award for unfinished commercial garage, noting appellants' "dissatisfaction" with the expert's projected profit calculations "were obviously fact questions resolved against [them] by the trial court"].)  Brockstar's de novo challenge based on its misapprehension and misquotation of law therefore fails.

---

[1]    At oral argument, Brockstar denied it claimed a new business could never recover lost profits, but its brief painted a different picture, asserting GoMirror fell into "the classic example of a new business seeking damages for its lost profit when, for years, case law has held that damages for 'lost profit' are too speculative for recovery [citations]."  Brockstar then quoted an excerpt from a case (*Resort Video, Ltd. v. Laser Video, Inc.* (1995) 35 Cal.App.4th 1679, 1698 (*Resort Video*)), purporting to suggest a categorical rule that "'if a business is new, it is improper to award damages for loss of profits . . . .'"

Similarly, Brockstar's jaundiced view of the evidence affords no basis to overturn the lost profits award. Brockstar cites and discusses only facts supporting its position, without citing or disputing any of the facts supporting the trial court's award. But "as with any challenge to the sufficiency of the evidence, it is the appellant's burden to set forth not just the facts in its favor, but all material evidence on the point. '"Unless this is done the [claimed] error is deemed to be waived."' [Citation.]" (*Stewart v. Union Carbide Corp.* (2010) 190 Cal.App.4th 23, 34.)

Even overlooking Brockstar's waiver, substantial evidence supports the trial court's decision to award lost profits. The reviewing court must "view the evidence in the light most favorable to" the prevailing party. (*Kids' Universe v. In2Labs* (2002) 95 Cal.App.4th 870, 886.) Brockstar asserts the GoMirror product "offered little or no added 'benefit' to the consumer that other cosmetic mirrors, much cheaper in price, already offered," but substantial evidence demonstrated GoMirror's market viability. Von Glasow earned a patent for his unique design, and independent market research showed consumer demand as high as 87 percent in the target demographic. "'[I]f the business is a new one or if it is a speculative one . . . , damages may be established with reasonable certainty with the aid of expert testimony, economic and financial data, market surveys and analyses, business records of similar enterprises, and the like.'" (*Ibid.*) With ample experience evaluating new business opportunities and their pitfalls, GoMirror's accounting expert explained in testimony backed by numerous exhibits that the company's business plan, contingency plans, product pricing, market analysis, distribution strategy, and cost estimates were reasonable and supported a "very conservative" three-year profit total of $4 million.

Brockstar emphasizes von Glasow "had not sold those few products" he manufactured in an initial production of 5,000 units, but where a defendant "made it impossible" to realize sales, "it cannot complain" if the product's success and profitability "are of necessity estimated." (*Natural Soda Prod. Co. v. City of L.A.* (1943) 23 Cal.2d 193, 200 (*Natural Soda*).) Moreover, Brockstar overlooks that the initial run was made for product placement and as a DRTV "proof of concept" requirement to demonstrate manufacturing capability. Indeed, the units were not created for piecemeal sale, but rather for mass distribution in the DRTV campaign Brockstar foiled with its funding breach.

Brockstar also suggests von Glasow "had never manufactured any products, [nor] marketed cosmetics or cosmetic accessories," but the evidence showed otherwise. Von Glasow's self-financed initial production run demonstrated he could manufacture the GoMirror product, and he also had experience overseeing manufacturing of promotional products in his marketing work for major companies selling cosmetics and "a lot of female products," including Proctor & Gamble and Johnson & Johnson. As he explained in his testimony, after earning his master's degree and Ph.D. in business administration, his responsibilities for these companies included "creating products, testing products in terms of their viability or nonviability, also manufacture of products, also sales of products via direct marketing, direct selling [and] retail selling." Additionally, GoMirror's expert testified he conducted high-level executive interviews in the cosmetics industry to confirm the price point and market viability of the GoMirror product. In view of the foregoing and the standard of review, substantial evidence supports the trial court's decision to include lost profits in the judgment. (See *S. Jon Kreedman*,

11

58 Cal.App.3d at p. 185 ["The trial court could have believed [appellant's] version of profitability; it chose not to do so"].)

Brockstar's challenge to the sufficiency of the evidence supporting the *amount* of the trial court's lost profits award also fails. Brockstar repeats its mistake of failing to view the record in the light most favorable to the verdict. More fundamentally, Brockstar ignores the cardinal rule that litigants must "bring ambiguities and omissions in the statement of decision's factual findings to the trial court's attention — or suffer the consequences." (*Fladeboe v. American Isuzu Motors Inc.* (2007) 150 Cal.App.4th 42, 59 (*Fladeboe*).) Specifically, "the reviewing court will infer the trial court made every implied factual finding necessary to uphold its decision, even on issues not addressed in the statement of decision." (*Id.* at p. 48.) "The appellate court then reviews the implied factual findings under the substantial evidence standard." (*Id.* at p. 60.)

Brockstar complains that in reducing the $4 million in lost profits established by the testimony of GoMirror's expert to $600,000, "there is absolutely no evidence in the record to support the trial court's calculation." The trial court explained its lost profits award rather opaquely in a sentence fragment and two sentences in the statement of decision, as follows: "Twenty-six (26) months of delayed income from Plaintiff's income stream resulting in damages of $600,000.00. The [c]ourt determined this amount from the loss of the income stream that GoMirror would [have] derived from the sale of GoMirror's units during time [*sic*] from the date when the loans were promised and not delivered to 26 months thereafter. Based upon the $4,000,000.00 estimate of GoMirror's expert, Mr. Querry, the court rules that GoMirror was damage[d] by ten percent over the extended period of time, an amount of $600,000."

12

Brockstar complains on appeal that "[t]here is simply no evidentiary support for *how* the court made [its] determination" of lost profit damages in the statement of decision. (Italics added.) But because Brockstar failed to object to or seek clarification of the statement of decision, any ambiguities or omissions in the statement of decision provide no basis for reversal. (*Fladeboe*, *supra*, 150 Cal.App.4th at p. 59.) Simply put, an appellant may not on appeal complain the trial court failed to detail in its statement of decision the factual basis for an award when the appellant made no objection below. (See, e.g., *Sammis v. Stafford* (1996) 48 Cal.App.4th 1935, 1942 ["[The] appellant] did not raise any objections to the statement of decision. We therefore are required to presume the trial court made all findings necessary to support the judgment"].)

Implied findings support the trial court's lost profits determination. Based on the overwhelming popularity of the product in market surveys, the trial court apparently viewed most of the sales GoMirror estimated it lost in a three-year period as only temporarily lost. In other words, the women who would have bought the product during the expert's initial three-year estimate would do so later given the chance, and therefore those sales, at $40 each, were only delayed. Consequently, the trial court decided it would award only a *percentage* of lost sales to account for the interim time-value of the delayed profits. As the trial court phrased it, GoMirror's actual loss consisted of a lost "income stream *derived from* the loss of income, i.e., the four million dollars that Mr. Querry suggested was the lost income" (italics added), and therefore applying a percentage to that figure was appropriate. The trial court mentioned 10 percent as a potential rate of return on the lost income, which mirrors the statutory rate

13

of prejudgment interest dating to the contract breach (Civ. Code, § 3289, subd. (b)), and Brockstar did not and does not challenge the statutory rate.

Brockstar complains it remains unclear how the trial court settled upon $600,000 in lost profit damages as the "income stream derived from" a loss of $4 million in income. Brockstar asserts the ambiguity is fatal because $4 million at a *flat* 10 percent rate of return yields only $400,000. But as Brockstar acknowledges, the trial court did not specify the manner in which it calculated the $600,000, including variables like whether it accrued at a flat or compound rate of interest. Brockstar may not rely on an ambiguity in the statement of decision to challenge the judgment when Brockstar did not object or seek clarification of the statement of decision below. As we explained in *Fladeboe*, if a party fails to bring omissions or ambiguities to the trial court's attention, "then 'that party waives the right to claim on appeal that the statement was deficient in these regards,' and the appellate court will infer the trial court made implied factual findings to support the judgment." (*Fladeboe*, *supra*, 150 Cal.App.4th at p. 59.)

We note a plaintiff is "not required to establish the amount of its damages with absolute precision" (*S. C. Anderson, Inc. v. Bank of America* (1994) 24 Cal.App.4th 529, 537-538), and when a defendant "ma[kes] it impossible for plaintiff to realize any profits, it cannot complain if the probable profits are of necessity estimated." (*Natural Soda*, *supra*, 23 Cal.2d at 200.) Put another way: "Where the promisor, by his willful breach of contract, has given rise to the difficulty of proving the amount of loss of profits, it is proper to require of the promise only that he show the amount of damages with 'reasonable certainty' and to resolve uncertainties against the promisor." (*Steelduct Co. v. Henger Seltzer Co.* (1945) 26 Cal.2d 634, 651.) Consequently, where substantial evidence supported the expert's calculation of $4 million in lost profits, substantial

14

evidence also supported the $600,000 the trial court awarded. As another court explained long ago, "Since the evidence with respect to loss of profits would have supported a larger award than was actually given, defendants cannot, on review, complain of the award or a supposed lack of evidence to sustain it." (*Tomlinson v. Wander Seed & Bulb Co.* (1960) 177 Cal.App.2d 462, 476.)

Moreover, Brockstar overlooks that GoMirror's lost income would have accrued on a rolling basis and that the trial court's calculation of an "income stream derived from the lost income" at a 10 percent rate of return would necessarily have a compounding effect as the income accrued. Thus, the implied findings supporting the judgment include the enhanced effect of compound interest. Additionally, we note the trial court reasonably could infer that not *all* the women unable to buy the product because of Brockstar's breach would do so later, whether because they died, could no longer afford it, or other circumstances. Accordingly, those sales *at full net profit per unit* (instead of one-tenth that amount in a derived income stream) were truly lost forever and justified an award significantly higher than $400,000 at the flat 10 percent rate, which also did not include compound interest. Brockstar's challenge is without merit.

C. *Sanctions*

GoMirror argues in its respondent's brief and in a motion and revised motion for sanctions that Brockstar's misstatements of the record, misapprehensions of law, and "'unsubstantiated potshot[s]'" against respondent in characterizing the record or in purportedly deducing "facts" from the record call for the conclusion Brockstar waived its challenges to the judgment and for $78,400 in attorney fee sanctions.

As discussed, we agree that some of Brockstar's appellate challenges are forfeited for failure to timely raise them or properly present them. Sanctions are

15

tempting, for like other courts, we tire of the wearisome slog through briefs that misconceive appeal as a retrial opportunity to better spin favorable facts and discount others as unsubstantiated. But "[w]ith rhythmic regularity it is necessary for us to say that where the findings are attacked for insufficiency of the evidence, our power begins and ends with a determination as to whether there is . . . substantial evidence to support them; that we have no power to judge of the effect or value of the evidence, to weigh the evidence, to consider the credibility of the witnesses, or to resolve conflicts in the evidence or in the reasonable inferences that may be drawn therefrom. No one seems to listen." (*Overton v. Vita-Food Corp.* (1949) 94 Cal.App.2d 367, 370.)

Accordingly, we share GoMirror's exasperation. But Brockstar's missteps on the law and facts do not appear to include intentional misstatements of the record or the law, nor malicious personal attacks on respondent. They seem instead to stem from Brockstar's poor grasp of appellate advocacy in which it reargued the case in the light most favorable to its position. Shading the record in this manner, with correspondingly loose record and case law citations, contravenes the standard of review, destroys the appellant's credibility, and dims or extinguishes any chance of success on appeal. Forfeiture is itself a dire, entirely apt consequence. Tainted by its bad facts, Brockstar's legal analysis also necessarily goes astray. But we conclude these faults do not rise to the level of sanctionable conduct here. It always remains the appellant's prerogative to challenge the sufficiency of the evidence on appeal, and the adversarial process by nature engenders widely divergent views of both the record and the law applicable to those facts, so the standard for sanctions must remain very high. Although the issue is close, that standard is not met here. Consequently, we deny the monetary sanctions request.

16

### III

### DISPOSITION

The judgment is affirmed.  Respondent is entitled to its costs on appeal.


ARONSON, ACTING P. J.

WE CONCUR:


FYBEL, J.


IKOLA, J.