[Civ. No. 35185. First Dist., Div. Four. Aug. 22, 1974.]

UNIVERSITY CASEWORK SYSTEMS, INC., Petitioner, v.
THE SUPERIOR COURT OF SANTA CLARA COUNTY, Respondent;
JASPER CONSTRUCTION, INC., Real Party in Interest.

264

**COUNSEL**

Myers, Hawley, Morley & Moore and Paul I. Myers, Jr., for Petitioner.

No appearance for Respondent.

Maloney, Chase, Fisher & Hurst and E. S. Wilson for Real Party in Interest.

## OPINION

**CHRISTIAN, J.**—A writ of review was issued upon the petition of University Casework Systems, Inc. to test the propriety of an order of respondent superior court reducing the amount of a surety bond posted by real party in interest, Jasper Construction, Inc., to obtain the release of funds payable to Jasper as the prime contractor on a public works project.*    ▮    Having determined that there can be no appellate review of an order made under Civil Code section 3203 in a summary proceeding to decrease the amount of a bond posted by a prime contractor in order to obtain the release of funds sequestered under a stop notice, we concluded that a writ of review, as provided for by Code of Civil Procedure section 1067 et seq., is an appropriate remedy. (See 2 Witkin, Cal. Procedure (2d ed. 1970) Provisional Remedies, pp. 1604-1605.)

University Casework claimed in its stop notice that as Jasper's subcontractor it had furnished labor and materials exceeding in value the entire subcontract price ($751,331.25), of which $271,230.58 remained owing and unpaid. Jasper filed with the Department of Public Works a bond assuring payment of 125 percent of the amount claimed in the stop notice, and the Department of Public Works released the money which had been withheld. (See Civ. Code, § 3196.) Jasper then pursued a "summary proceeding" in the superior court and obtained an order reducing the bond to 125 percent of $81,144.68. (See Civ. Code, §§ 3197, 3205.) That figure was derived by the court through the following computation: The amount received by Jasper up to January 18, 1972, for work performed by University Casework through November 30, 1971, was $623,605.94. The contract permitted Jasper to withhold 10 percent of sums received by it as progress payments for work done by subcontractors. Hence the court concluded that University Casework was entitled to receive $561,245.35 for its performance through November 30. Jasper had already made progress payments totaling $480,100.67, leaving a balance of $81,144.68.

Petitioner complains that the amount fixed by the court does not assure recovery of petitioner's actual expenditures on the job which, although performance was never completed, totaled $882,812.13. Petitioner's

---

*In *Jasper Constr., Inc.* v. *University Casework Systems, Inc.* (1974) 39 Cal. App.3d 582 [114 Cal.Rptr. 143], a purported appeal attacking the same order was dismissed on the ground that the statute (Civ. Code, § 3196 et seq.) made no provision for appellate review.

theory is that, although no statute expressly defines the amount that may be claimed in a stop notice, that amount should be determined by analogy to Civil Code section 3123 regulating similar protection afforded to suppliers under the Mechanics' Lien Law. (See *Sunlight Elec. Supply Co.* v. *McKee* (1964) 226 Cal.App.2d 47, 50 [37 Cal.Rptr. 782].) Section 3123 states that the amount of the lien "shall be for the reasonable value of the labor, services, equipment, or materials furnished or for the price agreed upon by the claimant and the person with whom he contracted, whichever is less."

In the present case the "price agreed upon" is $751,331.25. University Casework claims that the "reasonable value of the labor, services, equipment, or materials furnished" is $882,812.13. The contract price is the lesser figure. Therefore, University Casework claims, the bond should reflect the subcontract price minus the money already received from respondent, or $751,331.25 minus $480,100.67, which equals $271,230.58.

Jasper contends that the phrase "reasonable value" as used in section 3123 is to be limited by reference to the total subcontract price. For example, if University Casework completed 60 percent of its required performance, the reasonable value of the completed work would be 60 percent of the total contract price. As of January 18, 1972, Jasper had received a total of $623,605.94 for work performed by University Casework. Jasper claims that the reasonable value of petitioner's work was thus $623,605.94. Crediting against that sum the 10 percent authorized to be withheld and the $480,100.67 already paid, Jasper defends as correct the figure ($81,144.68) adopted by the court.

■ A party to a contract who fully performs his obligation under the contract may recover the value agreed to in the contract; the party may not recover above the contract price. (*Lemoge Electric* v. *County of San Mateo* (1956) 46 Cal.2d 659, 664-665 [297 P.2d 638]; *Prince* v. *Hill* (1915) 170 Cal. 192, 194 [149 P. 578]; *Benson Elec. Co.* v. *Hale Bros. Assoc., Inc.* (1966) 246 Cal.App.2d 686, 697 [55 Cal.Rptr. 73]; *Higgins* v. *Desert Braemar, Inc.* (1963) 219 Cal.App.2d 744, 751 [33 Cal.Rptr. 527]; *Hardwood Interior Co.* v. *Bull* (1914) 24 Cal.App. 129, 133 [140 P. 702].) It cannot have been the intention of Civil Code section 3123 to grant a greater proportional recovery to a subcontractor who does not complete his performance than to one who performs in full; under University Casework's theory it would be protected for a greater proportion of its claim than it would be if it had gone forward to complete its work. University Casework's interpretation of the statute also presents a serious

practical difficulty: one subcontractor who incurred serious cost overruns but did not complete performance could, by causing the owner to withhold the entire subcontract price, make it difficult or impossible for the prime contractor to bring in other forces and complete the job.

We conclude, therefore, that the court adopted the correct construction of the statute. ■ The term "reasonable value" as used in Civil Code section 3123 is to be limited to a proportion of the contract price reflecting the amount of progress made toward the completion of the work.

Nevertheless, the order reducing the bond was incorrect and must be modified. The record shows that through the month of January 1972, the state inspector for the project had approved payments to Jasper, on account of work done by University Casework, totaling 88 percent of the subcontract price. Therefore, University Casework was due a total of $661,171.50 (88 percent of the $751,331.25 subcontract price) minus 10 percent withheld pursuant to the subcontract, or a total of $595,054.35. Since Jasper has paid $480,100.67, the amount to be bonded at 125 percent is $114,953.68.

The order reducing the bond to 125 percent of $81,144.68 is modified to require bond in the amount of 125 percent of $114,953.68.

Caldecott, P. J., and Rattigan, J., concurred.