[No. A015696. First Dist., Div. One. Apr. 13, 1984.]

FLINTKOTE COMPANY et al., Plaintiffs and Appellants, v.
PRESLEY OF NORTHERN CALIFORNIA, Defendant and Respondent.

COUNSEL

John N. Norman for Plaintiffs and Appellants.

Sanford M. Skaggs, Palmer Brown Madden, Raymond L. Ocampo, Jr., and Van Voorhis & Skaggs for Defendant and Respondent.

OPINION

**NEWSOM, J.**—The instant appeal is from an award of damages to respondent Presley of Northern California for an improper bonded stop notice issued against it by appellant Flintkote Company. The other appellant, Fidelity and Deposit Company of Maryland, was the surety on the bond. The other respondent, Hyer Quality Painters, was declared bankrupt and is not a party to this appeal.

Presley was the owner and developer of certain residential tracts in Alameda County. Hyer, a licensed painting subcontractor, entered into various subcontracts with Presley to paint and install wallboard in the residential units under construction on those tracts. Flintkote, a material dealer in gypsum wallboard, supplied the wallboard to Hyer on an open account basis.

Payment under this arrangement was made by Presley submitting to Hyer a check made payable jointly to Flintkote and Hyer. Hyer would endorse the check and submit it to Flintkote who would in turn endorse and cash it, retaining amounts currently due on the open account and refunding the balance to Hyer.

On July 12, 1974, Flintkote, with Fidelity as surety, served a bonded stop notice on Presley and United California Bank. On July 15, 1974, Flintkote recorded its mechanic's lien on the project. Despite service of the bonded stop notice, Presley apparently continued payment to Hyer under the joint check arrangement, and, as a result of Hyer's bankruptcy, Flintkote was not fully paid.

On October 2, 1974, Flintkote filed action No. 14-33032-7 in Alameda County Superior Court, entitled "*The Flintkote Co. v. Hyer Quality Painters, Presley of Northern California, United California Bank et al.,*" on an open book account, foreclosure of mechanic's lien, stop notices and written guarantee.

The action was tried by the court on April 6 and 9, 1976. The trial court entered judgment foreclosing the stop notice and mechanic's lien for plaintiff Flintkote and against defendant Presley in the amount of $23,483.82. Presley appealed this decision.

The Court of Appeal, First Appellate District, Division Four, finding that Flintkote was not under the circumstances properly entitled to claim a stop notice, reversed the trial court's judgment in an unpublished opinion filed on May 4, 1978.

Presley then filed a cost bill for the appeal, claiming $1,824. Flintkote paid these costs on September 1, 1978.

For several months thereafter, counsel for Presley and counsel for the bond company negotiated with Flintkote regarding recovery of attorneys' fees under the bond. On March 28, 1980, Presley demanded damages from Fidelity on the stop notice bond in the amount of $12,948.92, plus interest to cover Presley's costs and attorney's fees for defending the action and the appeal. The demand letter stated that if Presley did not receive payment in

30 days, it would file a motion to recover said amount. Fidelity demanded indemnification from Flintkote. Flintkote rejected the demand on May 30, 1980, by letter to Presley's counsel.

On March 13, 1981, Presley filed the motion which is the subject of this appeal, seeking to recover costs, attorney's fees and interest from appellants Flintkote and Fidelity. On May 6, 1981, the court granted Presley's motion and judgment was entered thereon.

■ Appellants' initial contention is that, since Presley ignored the stop notice by continuing to issue joint checks to Flintkote and Hyer, they therefore suffered no damages as contemplated by Civil Code section 3083.[1]

The stop notice is part of the legislative scheme devised pursuant to the constitutional provision of security to those who furnish labor or materials in the erection or improvement of buildings. ■ A stop notice, or "notice to withhold" as it is sometimes called, is a notice by one who has furnished materials or labor for the construction of improvements, given to the owner of the property, or to a lender of funds to be used for payment of claims against such property, for the purpose of withholding money in the hands of such owner or lender from the contractor so that the materialman or laborer may be paid for his material or services. (*Theisen* v. *County of Los Angeles* (1960) 54 Cal.2d 170, 177-179 [5 Cal.Rptr. 161, 352 P.2d 529].)

"The bond protection runs to the holder of the fund, and is intended to protect the holder of the fund against all costs and all damages that the fund holder, owner, original contractor, or construction lender may suffer by reason of the equitable garnishment of the construction fund." (Marsh, California Mechanics' Lien Law Handbook (3d ed. 1979) p. 165.) Further, "The stop notice properly used, is the most powerful weapon in the arsenal of the unpaid claimant." (*Ibid.*) "The mechanics' lien attacks the owner's equity in the property. However, the lien claim may be frustrated if the prior encumbrances exceed the market value of the property. This is often

---

[1]Civil Code section 3083 defines "bonded stop notice": "Bonded stop notice' means a stop notice, given to any construction lender, accompanied by a bond with good and sufficient sureties in a penal sum equal to 1 ¼ times the amount of such claim conditioned that if the defendant recovers judgment in an action brought on such verified claim or on the lien filed by the claimant, the claimant will pay all costs that may be awarded against the owner, original contractor, construction lender, or any of them, and all damages that such owner, original contractor, or construction lender may sustain by reason of the equitable garnishment effected by the claim or by reason of the lien, not exceeding the sum specified in the bond. To be effective such bonded stop notice shall be delivered to the manager or other responsible officer or person at the office of the construction lender or must be sent to such office by registered or certified mail. If such notice is delivered or sent to any institution or organization maintaining branch offices, it shall not be effective unless delivered or sent to the office or branch administering or holding such construction funds."

the case, for example, on a construction job which is abandoned before completion. The stop notice, on the other hand, puts the burden on the lender, not the owner. The stop notice attacks the specific sum of money that has been committed to the improvement of the property. Thus, the pursuit of a valid lien claim can sometimes prove fruitless for lack of value in the property; but some moneys are almost always available to the timely stop notice claimant." (*Id.*, at p. 160.)

Furthermore, failure of the owner or lender to withhold money under an enforceable stop notice "may render him personally liable to the claimant, notwithstanding the absence of privity of contract." (*Connolly Development, Inc.* v. *Superior Court* (1976) 17 Cal.3d 803, 809 [132 Cal.Rptr. 477, 553 P.2d 637].)

As a counterpoise to this "most powerful weapon," however, Civil Code section 3083 imposes a penalty for its improper use. That penalty includes "costs" and "all damages that such owner . . . may sustain by reason of the equitable garnishment . . . not exceeding the sum specified in the bond."

The inappropriateness of the filing of the stop notice in the instant case has been determined by the ruling of the First Appellate District, Division Four, that, in the statutory language, "defendant recovers judgment" in the underlying action. Since the only way defendant could defeat the personal liability sought to be imposed by the foreclosure of the stop notice was to demonstrate the impropriety of the underlying claim by a defense on the merits, attorney fees are properly recoverable.

In *Systems Inv. Corp.* v. *National Auto. & Cas. Ins. Co.* (1972) 25 Cal.App.3d 1057 [102 Cal.Rptr. 378], a property owner brought an action against a contractor's surety on a bond posted in connection with the stop payment notice under former Code of Civil Procedure section 1190.1, subdivision (h) (superseded by Civ. Code, § 3083, the code section in question in the instant action, which restates the substance of former Code Civ. Proc., § 1190.1). The court held: "Since the stop notice statute has been held a type of attachment and since attorney fees are recoverable as damages under the attachment statute, and in view of the similarity of wording in both statutes, plaintiff's argument that attorney fees were damages under subdivision (h) of section 1190.1 of the Code of Civil Procedure is valid." (*Systems Inv. Corp.*, *supra*, at p. 1061.)

Finding the reasoning of *Systems Inv. Corp.* to be persuasive, we therefore conclude that, by being forced to defend against the improper imposi-

tion of the stop notice, respondent has suffered "damages" within the contemplation of Civil Code section 3083.

So persuaded, we are likewise compelled to reject appellants' contention that the bond is void by its own terms.

The bond on which Presley seeks to recover was issued July 12, 1974. It provides, in part: "Now, therefore, the condition of the above obligation is such, that if the Principal shall pay or cause to be paid all costs and damages awarded to the Defendant in the action brought on such claim against the owner, contractor, or obligee named herein because of the lien or equitable garnishment, then this obligation shall be void, otherwise to remain in full force and effect."

■ Appellants appear to argue that, since it paid the *costs* of $1,824 in September 1978, and since there were no damages sustained by reason of the garnishment, the obligation evidenced by the bond has been extinguished.

For the reasons cited above, however, attorney fees are "damages" within the contemplation of Civil Code section 3083; and, since these damages have not been paid, the obligation evidenced by the bond remains in full force and effect.

■ Lastly, we briefly address appellants' contention that respondent's motion to enforce liability is barred by the statute of limitations.

Former Code of Civil Procedure section 1058, subdivision (a), which provided the procedural mechanism to enforce liability on the bond via motion in the trial court, is silent as to the time within which such a motion must be brought—a deficiency now cured in current Code of Civil Procedure section 996.440, which provides for a one-year limitation period. Beyond noting these facts, however, we deem it fruitless in the instant case to dwell on the limitations problem, since, even were we to conclude that the applicable period is one year, we find respondent's argument that appellant should be estopped from asserting it to be well-taken.

The events subsequent to the decision of the appellate court in this case are set forth in a series of declarations to the trial court by respondent's counsel, and are not controverted by appellants. They reveal that, following that decision, respondent negotiated with counsel for Fidelity regarding recovery under the bond. Counsel for Fidelity represented that they in turn would negotiate with Flintkote. In reliance upon these apparently good-faith negotiations, respondent refrained from filing its motion until finally in-

formed by counsel for Fidelity that settlement was impossible as counsel for Flintkote was obdurately (and in our view groundlessly) opposed to settlement.

A party may, by his conduct, estop himself from pleading the one-year statute of limitation. (*Carruth* v. *Fritch* (1950) 36 Cal.2d 426 [224 P.2d 702, 24 A.L.R.2d 1403].) Promises of settlement without the need of resorting to suit have been held to constitute such conduct. (*Miles* v. *Bank of America etc. Assn.* (1936) 17 Cal.App.2d 389 [62 P.2d 177]; *Industrial Indem. Co.* v. *Ind. Acc. Com.* (1953) 115 Cal.App.2d 684 [252 P.2d 649].) As the uncontroverted affidavits of counsel for respondent disclose that the possibility of an amicable settlement was being pursued earnestly by at least Presley and Fidelity, we conclude that appellants are here estopped from invoking the shield of the one-year limitation period.

The judgment is affirmed. Costs on appeal, including reasonable attorney fees, to be borne by appellants.

Racanelli, P. J., and Elkington, J., concurred.