Filed 12/28/20  BMC West Corp. v. Town Center Courtyard CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| BMC West Corporation, LLC, | D076123 |
| Plaintiff and Respondent, | |
| v. | (Super. Ct. No. ECU09255) |
| TOWN CENTER COURTYARD, LLC, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Imperial County, L. Brooks Anderholt, Judge.  Affirmed.

Law Offices of John A. Tkach and John A. Tkach; Timothy G. Scanlon; Klein, DeNatale, Goldner, Cooper, Rosenlieb & Kimball, Catherine Elizabeth Bennett and R. Jeffrey Warren for Defendant and Appellant Town Center Courtyard, LLC.

Finch, Thornton & Baird, Jason Thornton, P. Randolph Finch, Andrea L. Petray and Christopher D. F. Foster for Plaintiff and Respondent BMC West Corporation, LLC.

Defendant and appellant Town Center Courtyard, LLC (Town) appeals from a summary judgment in favor of plaintiff and respondent BMC West Corporation (BMC) on BMC's action to enforce a mechanics lien and stop notice against Town. BMC, a Delaware corporation, filed its lawsuit days after it had converted to a limited liability company, BMC West, LLC (LLC). The trial court granted BMC's motion for summary judgment, ruling BMC had standing under Delaware law because it and LLC were the same entity, and Town had not shown triable issues of material fact regarding the sums due BMC. On appeal, Town contends BMC no longer held a vested interest in the liens and lacked standing to sue because the liens had transferred to LLC. Town further contends it presented direct evidence via deposition testimony and documents showing only 96 percent of BMC's contract had been completed, raising a triable issue of fact as to BMC's entitlement to damages. We disagree and affirm the judgment.

FACTUAL AND PROCEDURAL BACKGROUND[1]

Town is the owner of a construction project in the city of El Centro (the project). It contracted with a general contractor, Patterson Builders, which subcontracted with BMC to perform rough carpentry, trusses and other work

---

[1]     We state the undisputed facts from the parties' separate statements submitted in support of and in opposition to BMC's motion, and state other facts in the light most favorable to Town as the party opposing the motion, resolving evidentiary doubts and ambiguities in its favor. (See *B.H. v. County of San Bernardino* (2015) 62 Cal.4th 168, 178.) In its opposing separate statement of material facts, Town purports to dispute virtually every one of BMC's asserted undisputed facts, stating they are disputed "to the extent [the stated fact] implies that BMC West Corporation is the proper entity to bring suit" and asserting that "BMC West Corporation no longer exists. It was converted from a Delaware Corporation to a Delaware LLC on August 1, 2016." We disregard these portions of Town's separate statement which seek to raise disputes as to questions of law, not fact.

for payment of $1,533,410. BMC, which was licensed with the California Contractors State License Board, submitted payment applications to Patterson Builders, which in turn submitted to Town payment applications encompassing BMC's applications. Town paid Patterson Builders $1,345,004.91 for BMC's work, and Patterson Builders paid BMC $897,044.45.

In May 2016, BMC recorded a mechanics lien in the sum of $688,564.15. It recorded an amended lien for the same amount in June 2016. Thereafter, Town paid BMC $240,081.09. In June 2016, BMC served Town with a stop payment notice to withhold the sum of $688,564.15.

In August 2016, BMC converted to a limited liability company—BMC West LLC—pursuant to Section 18-201 of the Delaware Limited Liability Company Act. The Delaware Secretary of State certified that LLC had a legal existence as of August 1, 2016, but was formed on October 13, 1987, the formation date of BMC. Two days later, BMC filed its complaint against Town to foreclose on its mechanics lien and to enforce a stop payment notice. While the action was pending, BMC filed partial releases of the lien so that $447,960.06 was the remaining sum it claimed was owed.

BMC moved for summary judgment or alternatively summary adjudication of issues. It argued there were no disputes as to all of the elements of its mechanics lien cause of action; that $447,960.06 was the undisputed principal amount due for its work on the project based on the outstanding balance of its subcontract, and that sum was also the amount allocable to it in Town's payments to Patterson Builders. BMC argued it timely recorded its amended mechanics lien and filed suit, meeting the statutory requirements for such a cause of action. It argued it was undisputed it complied with the procedural requirements to enforce its stop

3

notice. BMC argued it was entitled to prejudgment interest on its claims. It asked the court to enter judgment in its favor for $538,967.68 for the principal balance due, $60 in fees for recording the liens and partial releases, and $90,947.62 in prejudgment interest.

In opposition, Town argued BMC was not entitled to summary judgment because it had no standing by virtue of being "merged out of existence" before the complaint was filed. According to Town, the holder of the lien rights was LLC, which was not a party to the action. Town maintained the enforceability of the mechanics lien and stop notice ran with the debt, and under Delaware law, specifically, title 8 of Delaware Code section 266, subdivision (d) (at times, section 266), an entity's assets, including the debt, runs to the new entity so that only LLC had the right to enforce it and pursue remedies under California's mechanics lien and stop notice laws. Town argued once BMC ceased to exist, it was no longer the proper party to advance the claims at issue. Town additionally argued there was a triable issue of material fact as to the amount of damages given evidence that Patterson Builders claimed BMC performed only about 96 percent of the work and was not owed more than $334,949.26, while BMC contended it was owed $447.960.06.[2]

As support for its damages contention, Town argued BMC did not submit admissible evidence of its change orders and in any event the change orders did not add up to the over $1.5 million that BMC claimed was the value of its work. Town argued BMC did not meet its summary judgment burden, as BMC and Patterson Builders disagreed about how much work

---

[2]   In opposition, Town filed numerous objections to BMC's evidence. The trial court sustained three of the objections and overruled the rest. Town does not challenge the evidentiary rulings on appeal, so we rely on all the evidence except that to which objections were sustained.

4

BMC performed; Patterson Builders contended BMC performed only 96 percent of the original contracted scope of work and that BMC's value added to the project was only $1,472,075.20. Finally, Town argued it and Patterson Builders paid BMC $1,137,125.94, leaving only $334,949.26 owed BMC on the 96 percent of the work it performed. Town presented deposition excerpts from Dru Patterson to support that proposition.

The trial court granted BMC's motion. With regard to BMC's conversion to an LLC, the court ruled BMC West Corporation and LLC were the same entity pursuant to Delaware law. It found several of BMC's facts related to its causes of action were undisputed and that Town's evidence in dispute was "ambiguous at best," requiring the court to draw inferences that were not reasonably deducible from any evidence.

Town filed this appeal from the ensuing judgment.

## DISCUSSION

### I. *Summary Judgment Standards*

A plaintiff may move for summary judgment on grounds there is no defense to the action, and the motion "shall be granted if all the papers submitted show that there is no triable issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." (Code Civ. Proc., § 437c, subds. (a)(1), (c); *Merrill v. Navegar, Inc.* (2001) 26 Cal.4th 465, 476.) "A plaintiff . . . has met his or her burden of showing that there is no defense to a cause of action if that party has proved each element of the cause of action entitling the party to judgment on the cause of action. Once the plaintiff . . . has met that burden, the burden shifts to the defendant . . . to show that a triable issue of one or more material facts exists as to the cause of action or a defense thereto. The defendant . . . shall not rely upon the allegations or denials of its pleadings to show that a triable issue of material

5

fact exists but, instead, shall set forth the specific facts showing that a triable issue of material fact exists as to the cause of action or a defense thereto." (Code Civ. Proc., § 437c, subd. (p)(1); see *Los Alamitos Unified School Dist. v. Howard Contracting, Inc.* (2014) 229 Cal.App.4th 1222, 1225.) "In determining if the papers show that there is no triable issue as to any material fact, the court shall consider all of the evidence set forth in the papers, except the evidence to which objections have been made and sustained by the court, and all inferences reasonably deducible from the evidence, except summary judgment shall not be granted by the court based on inferences reasonably deducible from the evidence if contradicted by other inferences or evidence that raise a triable issue as to any material fact." (Code Civ. Proc., § 437c, subd. (c).) "There is a triable issue of material fact if, and only if, the evidence would allow a reasonable trier of fact to find the underlying fact in favor of the party opposing the motion in accordance with the applicable standard of proof." (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 850.)

Our review is de novo. (*Jacks v. City of Santa Barbara* (2017) 3 Cal.5th 248, 273; *Hampton v. County of San Diego* (2015) 62 Cal.4th 340, 347.) The lower court's reasoning is irrelevant; we owe it no deference and review the ruling not the rationale. (*Coral Construction, Inc v. City and County of San Francisco* (2010) 50 Cal.4th 315, 336; *Navarrete v. Meyer* (2015) 237 Cal.App.4th 1276, 1283.) We assume the trial court's role and redetermine the merits of the motion (*Pasadena Metro Blue Line Construction Authority v. Pacific Bell Telephone Co.* (2006) 140 Cal.App.4th 658, 663), considering all of the evidence presented by the parties (except for evidence that the trial court properly excluded), liberally construing the evidence in support of Town, the party opposing summary judgment, and resolving all doubts about whether

6

triable issues of material fact exist in Town's favor. (*Hughes v. Pair* (2009) 46 Cal.4th 1035, 1039; *Caliber Paving Company, Inc. v. Rexford Industrial Realty and Management, Inc.* (2020) 54 Cal.App.5th 175, 180.) "Courts deciding motions for summary judgment or summary adjudication may not weigh the evidence but must instead view it in the light most favorable to the opposing party and draw all reasonable inferences in favor of that party." (*Weiss v. People ex rel. Department of Transportation* (2020) 9 Cal.5th 840, 864.)

"While the appellate court must review a summary judgment motion by the same standards as the trial court, it must independently determine as a matter of law the construction and effect of the facts presented." (*Pasadena Metro Blue Line Construction Authority v. Pacific Bell Telephone Co.*, *supra*, 140 Cal.App.4th at p. 663.)

II. *Standing/Real Party in Interest Claim*

Town contends the trial court erred when it concluded BMC and LLC were the same entity. Town repeats the arguments it made below, asserting that mechanics liens and stop notices are security for debt whose enforceability runs with the debt, and under section 266 of Delaware law, the assets and debt run to the new entity, LLC, which was the only entity with the right to sue on the debt. Town argues that after the conversion, BMC "no longer existed," and that under *Brown v. Superior Court* (2018) 19 Cal.App.5th 1208 and *Zloop, Inc. v. E Recycling Systems, LLC* (W.D.N.C. 2014) [2014 WL 6977791], BMC was no longer the proper party in interest to sue, precluding summary judgment in its favor.

To have standing, a party must have a real interest in the controversy, and be able to demonstrate its interest is concrete and actual, not conjectural or hypothetical. (*County of San Diego v. San Diego NORML* (2008) 165

7

Cal.App.4th 798, 814; *City of Palm Springs v. Luna Crest Inc.* (2016) 245 Cal.App.4th 879, 883; see also *Redevelopment Agency of San Diego v. San Diego Gas & Electric Co.* (2003) 111 Cal.App.4th 912, 920-921 ["Only a real party in interest has standing to prosecute an action, except as otherwise provided by statute. . . . 'A real party in interest ordinarily is defined as the person possessing the right sued upon by reason of the substantive law' "].) A complaint filed by one who is not a real party in interest fails to state a cause of action. (*Redevelopment Agency*, at p. 921.)

Delaware law determines whether BMC ceased to exist for purposes of bringing suit after its conversion. " '[T]he continuing legal existence of a corporation depends on the law of the state of incorporation.' " (*The Capital Gold Group, Inc. v. Nortier* (2009) 176 Cal.App.4th 1119, 1127, quoting *CM Record Corp. v. MCA Records, Inc.* (1985) 168 Cal.App.3d 965, 967.) "A corporation that lacks the capacity to sue in its home state based on a lack of corporate status, also lacks capacity to sue in California, because 'it has no greater capacity to sue in California than in its home state.' " (*Nortier*, at p. 1127.)

The Delaware law under which BMC converted to an LLC, section 266, title 8 of the Delaware Code Annotated, provides in part: "When a corporation has been converted to another entity or business form pursuant to this section, the other entity or business form shall, for all purposes of the laws of the State of Delaware, be deemed to be the same entity as the corporation. When any conversion shall have become effective under this section, for all purposes of the laws of the State of Delaware, all of the rights, privileges and powers of the corporation that has converted, and all property, real, personal and mixed, and all debts due to such corporation, as well as all other things and causes of action belonging to such corporation, shall remain

8

vested in the other entity or business form to which such corporation has converted and shall be the property of such other entity or business form, and the title to any real property vested by deed or otherwise in such corporation shall not revert or be in any way impaired by reason of this chapter; but all rights of creditors and all liens upon any property of such corporation shall be preserved unimpaired, and all debts, liabilities and duties of the corporation that has converted shall remain attached to the other entity or business form to which such corporation has converted, and may be enforced against it to the same extent as if said debts, liabilities and duties had originally been incurred or contracted by it in its capacity as such other entity or business form. The rights, privileges, powers and interest in property of the corporation that has converted, as well as the debts, liabilities and duties of such corporation, shall not be deemed, as a consequence of the conversion, to have been transferred to the other entity or business form to which such corporation has converted for any purpose of the laws of the State of Delaware." (Del. Code Ann. tit. 8, § 266(h).)

That statute further provides: "Unless otherwise provided in a resolution of conversion adopted in accordance with this section, the converting corporation shall not be required to wind up its affairs or pay its liabilities and distribute its assets, and the conversion shall not constitute a dissolution of such corporation." (Del. Code Ann. tit. 8, § 266(f).)

The Delaware statute is not a model of clarity. On the one hand, it states that a converting corporation's rights and debts due it "remain vested" with the new entity, here LLC. On the other hand, it states that the corporation's rights and powers are not deemed transferred to the new entity. What is clear about the law is that the corporation as an entity does not cease to exist. Additionally, the Delaware statute provides that the new entity

9

shall be deemed to be the same entity as the corporation. This language has been construed to mean just that: the converting and converted entities are treated as the same. (See *Vanguard Car Rental USA, LLC v. Suttles* (Fla.Dist.Ct.App. 2016) 190 So.3d 672, 676-677 ["similar to Florida law, Delaware law provides that when one entity converts to another corporate form, the entities shall be deemed to be the same" and "pre and post-converted entities are to be treated as the same entity for all purposes"].) Giving the Delaware statue its plain and commonsense meaning as we must (*Kirzhner v. Mercedes-Benz USA, LLC* (2020) 9 Cal.5th 966, 972), it is apparent that in Delaware, when one entity converts to another corporate form, the converted entity is the same entity as the original entity; the original entity is not dissolved or its debts transferred to the new entity. BMC and LLC were deemed formed on the same date, and are the same entity "for all purposes" of Delaware law. This means a lawsuit by the corporate entity is also a lawsuit by LLC, and vice versa. Despite any possible conflict between the notion of rights vesting with, but not being transferred to, LLC, we do not view the statute as eliminating BMC's concrete interest in enforcing its lien via the action commenced after its conversion, particularly where BMC still exists as an entity. Given that BMC and LLC are interchangable and BMC's rights did not transfer to LLC, we see no issue with standing, nor can we conclude the action by BMC is deficient as not brought by the real party in interest.

None of Town's authorities or arguments convince us otherwise. Town's assertion that the "assets (including this debt [the liens as security for the debt]) run to the new entity" is not supported by either section 266 or by *Zloop, Inc. v. E Recycling Systems, LLC, supra*, WL 6977791. In that case, Zloop, LLC, a Delaware entity, purchased equipment from the defendant.

10

(*Id*. at *1.)  When problems arose, a lawsuit against defendant regarding the transaction was commenced by Zloop, Inc., a Delaware corporation, an entity that the LLC had converted to in March 2014.  (*Id*. at *1.)  On the defendant's claim that the corporation did not have standing to sue, the North Carolina District Court noted that section 265 of Title 8 of the Delaware Code, having similar language to section 266 here,[3] allowed the conversion of the LLC to a corporation.  The court explained:  "The statute plainly provides for a change in corporate form that (1) amounts to a continuation of the former entity and (2) does not constitute a dissolution, merger, or a transfer of assets."  (*Id*. at

---

[3]    Section 265 of Title 8 of the Delaware Code provides:  "When another entity has been converted to a corporation of this State pursuant to this section, the corporation of this State shall, for all purposes of the laws of the State of Delaware, be deemed to be the same entity as the converting other entity.  When any conversion shall have become effective under this section, for all purposes of the laws of the State of Delaware, all of the rights, privileges and powers of the other entity that has converted, and all property, real, personal and mixed, and all debts due to such other entity, as well as all other things and causes of action belonging to such other entity, shall remain vested in the domestic corporation to which such other entity has converted and shall be the property of such domestic corporation and the title to any real property vested by deed or otherwise in such other entity shall not revert or be in any way impaired by reason of this chapter . . . .  The rights, privileges, powers and interests in property of the other entity, as well as the debts, liabilities and duties of the other entity, shall not be deemed, as a consequence of the conversion, to have been transferred to the domestic corporation to which such other entity has converted for any purpose of the laws of the State of Delaware.  (Del. Code Ann. tit. 8, § 265(f).)  The statute further provides:  "Unless otherwise agreed for all purposes of the laws of the State of Delaware or as required under applicable non-Delaware law, the converting other entity shall not be required to wind up its affairs or pay its liabilities and distribute its assets, and the conversion shall not be deemed to constitute a dissolution of such other entity and shall constitute a continuation of the existence of the converting other entity in the form of a corporation of this State."  (Del. Code Ann. tit. 8, § 265(g).)

11

*3.) The defendant had entered into contracts with the LLC, whose existence was governed by Delaware law (*id.* at *3, fn. 7), and "according to the laws of Delaware, 'Zloop, Inc.' means 'Zloop, LLC' then 'Zloop, LLC' will be a proper party to the current lawsuit and have standing to sue on the contract." (*Id.* at *3.) The court described the LLC as "an entity known as 'Zloop, Inc.'" (*Ibid.*)

Just as in *Zloop* where the entities were the same and the corporation meant the converting LLC, in this case BMC and LLC are the same entity such that BMC is LLC, and thus is still a proper party notwithstanding its change in corporate form. We agree with the *Zloop* court's observation that "allowing a dismissal due to a change in corporate structure would amount to elevating form over substance." (*Zloop, Inc. v. E Recycling Systems, LLC*, *supra*, WL 6977791, at *4, fn. 8.) In the other case relied upon by Town, *Brown v. Superior Court*, *supra*, 19 Cal.App.5th 1208, the court addressed a motion to compel joinder of a corporation as a necessary party, noting in a footnote that "[m]ore than two years before the motion was filed, [the corporation] was converted to [an LLC], a Delaware limited liability company, and, thus, the corporation no longer had a legal existence." (*Brown*, at p. 1215, fn. 7.) The *Brown* court made that observation without citation to authority, and it is contrary to Delaware law providing that the converting corporation is not dissolved by the conversion. (Del. Code Ann. tit. 8, § 266(f); accord, *Browning-Ferris Industries, Inc. & Subsidiaries v. U.S.* (Fed.Cir. 2008) 274 Fed.Appx. 904, 908 [Delaware corporation continued to exist after conversion to LLC for purposes of being qualified to act as an agent for a consolidated group under treasury regulations].) *Brown* does not warrant a different result.

12

Town cites Code of Civil Procedure section 368.5[4] for the proposition that where a debt has been transferred, the transferee is the only party with a right to sue on the underlying contract.  It argues the transferor may maintain the action only if the action was commenced before the transfer, thus BMC cannot rely on that section.  Town includes "but see" cites to *Searles Valley Minerals Operations Inc. v. Ralph M. Parsons Service Co.* (2011) 191 Cal.App.4th 1394 and *Johnson v. County of Fresno* (2003) 111 Cal.App.4th 1087 for the proposition that once a transfer occurs, the assignor lacks standing to sue on the claim.

Code of Civil Procedure section 368.5 addresses the effect of a "transfer of an interest in the action or proceeding or . . . any other transfer of an interest."  (Code Civ. Proc., § 368.5.)  As stated however, Delaware's section 266 makes clear no rights transfer in a corporate conversion, thus the California statute is inapplicable.  Likewise, *Searles Valley Minerals Operations Inc. v. Ralph M. Parsons Service Co.*, *supra*, 191 Cal.App.4th 1394 and *Johnson v. County of Fresno*, *supra*, 111 Cal.App.4th 1087 are inapposite as both involve assignments of rights that transferred the interests assigned. (*Searles*, at p. 1396 ["we conclude that an assignee of contract indemnification rights stands in the shoes of the indemnitee" for purposes of a cause of action for express indemnity]; *id.* at p. 1405; *Johnson*, at p. 1096 ["An assignment carries with it all the rights of the assignor.  [Citations.]  'The assignment merely transfers the interest of the assignor.' . . .  Once a claim has been assigned, the assignee is the owner and has the right to sue on it.  [Citations.]

---

4    As BMC points out, Town's brief contains a typographical error, referring to section 367.5 of the Code of Civil Procedure rather than section 368.5.

In fact, once the transfer has been made, the assignor lacks standing to sue on the claim"].)

In reply, Town maintains corporations and LLCs are "not the same thing" and that Delaware's section 266 "applies to issues concerning *internal control*—not to issues of relations with third parties, particularly in a different forum." According to Town, the Delaware law recognizes this "by limiting the 'sameness' to reasons pertaining to 'the laws of the State of Delaware.' " This "internal control" point appears to be a theory not raised below that cannot be raised for the first time on appeal, or in a reply brief. (See *DiCola v. White Brothers Performance Products*, *Inc.* (2008) 158 Cal.App.4th 666, 676 [new theory on summary judgment]; *Varjabedian v. City of Madera* (1977) 20 Cal.3d 285, 295, fn. 11 ["Obvious reasons of fairness militate against consideration of an issue raised initially in the reply brief of an appellant"].) Even if we were to consider the point, we would reject it. The fact that section 266 operates for purposes of Delaware law does not change our conclusion, because as stated, California looks to Delaware law to determine whether an entity has a continued legal existence and capacity to sue. We see nothing about the Delaware law (or, for that matter, *Browning-Ferris Industries, Inc.*, *supra*, 274 Fed.Appx. 904, on which Town relies) limiting its operation to "internal control." Delaware recognizes the converting corporate entity and new LLC are the same entity, resolving the issue of BMC's standing for the reasons expressed above.

For the foregoing reasons, we reject Town's claim that summary judgment was unwarranted either because BMC lacked standing or was not the real party in interest.

### III. *BMC's Damages*

Town contends that even if BMC has standing to sue, it was not entitled to summary judgment because Town presented evidence raising triable issues of material fact about the amount BMC is owed under its mechanics lien and stop notice. Town asserts the law gives recovery only for the reasonable value of the work provided or its contract price, whichever is less, and that Patterson's deposition testimony, while not a "model of clarity," proved BMC had not completed 100 percent of its work. According to Town, Patterson's documents and testimony constitute direct evidence that BMC completed only 96 percent of its work on the project, and it was not the trial court's role in addressing a summary judgment motion to assess the credibility of that evidence. Town distinguishes cases in which summary judgment was properly granted involving deposition testimony that an opposing party sought to contradict (*Joseph E. DiLoreto, Inc. v. O'Neill* (1991) 1 Cal.App.4th 149, 152), or unreasonable or speculative inferences drawn from evidence (*O'Neil v. Dake* (1985) 169 Cal.App.3d 1038, 1045; *Cothran v. Town Council of Los Gatos* (1962) 209 Cal.App.2d 647, 664; *Marshall v. Parkes* (1960) 181 Cal.App.2d 650, 655). Town argues, "If BMC . . . did not finish this contract, it may not have the entire contract price."

BMC responds that it presented prima facie evidence it completed its work by March 18, 2016, as reflected in its amended subcontract, shifting the burden to Town to present contrary evidence raising an issue of fact for a jury. It argues Town's opposing evidence consisting of Patterson's deposition testimony as to 96 percent completion and other evidence—payment applications through November 30, 2015, and February 29, 2016, at which time BMC concedes it had not completed its work—cannot raise a triable issue of fact on the matter. BMC acknowledges that Town points to another

15

payment application through March 25, 2016, but argues the payment applications are not conclusive statements of fact regarding the ultimate completion of BMC's subcontract and change order work, and additionally, Patterson, the sole person to authenticate the payment applications, stated they were inaccurate.

A. *Legal Principles*

" 'A mechanic's lien is a claim against real property, which may be filed if a claimant has provided labor or furnished materials for the property and has not been paid. [Citation.]' [Citation.] Thus, ' "[it] is a procedural device for obtaining payment of a debt [owed] by a property owner for the performance of labor or the furnishing of materials used in construction." [Citation.]' [Citation.] [¶] 'Mechanics' lien law derives from our state Constitution . . . . The mechanics' lien is the only creditors' remedy stemming from constitutional command and our courts "have uniformly classified the mechanics' lien laws as remedial legislation, to be liberally construed for the protection of laborers and materialmen." [Citation.]' [Citation.] [¶] 'However, " '[a]lthough mechanic's lien laws should be liberally construed to protect those who have contributed skills, services or materials, towards the improvement of property, it has been recognized that lien laws are for the protection of owners as well as mechanic's lien claimants.' " ' " (*Precision Framing Systems Inc. v. Luzuriaga* (2019) 39 Cal.App.5th 457, 464.) A stop payment notice notifies an owner or lender to withhold money from the contractor so the materialman or laborer may be paid. (*Crosno Construction, Inc. v. Travelers Casualty and Surety Company of America* (2020) 47 Cal.App.5th 940, 950; *Flintkote Co. v. Presley of Northern California* (1984) 154 Cal.App.3d 458, 462.)

The parties agree that the amount of a subcontractor's mechanics lien is limited to the lesser of the amount stated in the contract between the claimant and the contractor, or the reasonable value of the labor, services, equipment and materials furnished.  (Civ. Code, § 8430; *University Casework Systems, Inc. v. Superior Court* (1974) 41 Cal.App.3d 263, 266.)  If the contract is fully performed, the maximum amount of the lien is the contract price.  (*University Casework*, at p. 266.)  The amount claimed in a stop notice may include only the amount due the claimant for work provided through the date of the notice.  (Civ. Code, § 8502, subd. (c).)

Mechanics liens are entirely statutory, so claimants must strictly, or at least substantially, observe and comply with the statute.  (*Precision Framing Systems Inc. v. Luzuriaga, supra*, 39 Cal.App.5th at pp. 464-465.)  Under the law, a mechanics lien claim filed prematurely—before the scope of work under a subcontract is completed—is void and cannot be enforced.  (*Id*. at pp. 466-470; *McCreary v. Toronto Midway Oil Co.* (1918) 38 Cal.App. 17, 20 [lien claim filed one day before labor terminated was premature and "confers no right for a lien"].)  In *Precision Framing*, the Court of Appeal upheld a summary judgment against a framing subcontractor on grounds it had not yet ceased work when it recorded its mechanics lien claim, making it prematurely filed.  (*Id*. at p. 460.)  Specifically, the court found there were no triable issues of a fact as to whether repairs were part of the subcontractor's work of improvement as the contact called for the subcontractor to provide design services as well as supply trusses necessary to complete the project, and because notices of correction as to the trusses were outstanding, the project could not be completed.  (*Id*. at pp. 468-469.)  In view of the contracts defining the relevant scope of work, the court held the subcontractor's opposing evidence—testimony from individuals that the subcontractor had

17

completed its scope of work—was merely factually unsupported legal opinion by lay witnesses, and not evidence that the truss repair was outside the scope of work. (*Id.* at p. 469.)

B. *Analysis*

We conclude BMC presented sufficient prima facie evidence that it performed work having a reasonable value of $447,960.06, for which it was not paid. In support of its motion, BMC presented a declaration from its market framing manager, John Lewis, who averred that between December 2015 and February 2016, after BMC's entry into the subcontract, 14 change orders for $51,676 were submitted and approved, increasing BMC's contract price to $1,585.086. Lewis also averred that BMC submitted monthly payment applications for its work performed, and BMC furnished the labor, services, equipment and materials for the project for which it has not been paid on or after October 1, 2015. He stated BMC's last day of work on the project was March 18, 2016, at which time BMC was owed $688,564.15, but after additional payments and BMC's issuance of partial releases, BMC was owed the principal balance of $447,960.06. BMC's general superintendent on the project averred that BMC "performed all work called for in the subcontract and subsequent Change Orders numbered 1 through 14 on the Project."

The burden thus shifted to Town to present evidence raising a jury issue concerning the value of BMC's work or the validity of its lien. As stated, Town points to Patterson's deposition testimony as direct evidence that BMC did not complete its work on the project. In its opposing summary judgment separate statement, Town pointed to payment applications that were exhibits to the Patterson deposition, including one application signed by

18

Patterson dated March 29, 2016, for a period ending March 25, 2016, listing trusses and rough carpentry as 96 percent complete.

We have reviewed the referenced deposition excerpts, construing them liberally and resolving any ambiguities in them in Town's favor as we must. (*Hughes v. Pair*, *supra*, 46 Cal.4th at p. 1039; *Fernandez v. Alexander* (2019) 31 Cal.App.5th 770, 779.) Town is correct that this court is not to weigh the evidence. (*Weiss v. People ex rel. Department of Transportation*, *supra*, 9 Cal.5th at p. 864.) However, the party opposing summary judgment must still produce admissible evidence raising a triable issue of fact and not evidence giving rise to mere speculation. (Code Civ. Proc., § 437c, subd. (d); *Fernandez*, at p. 779 [that opposing evidence is liberally construed "does not mean that courts may relax the rules of evidence in determining the admissibility of an opposing declaration"].) Likewise, mere conclusions of law or fact are not sufficient to satisfy the evidentiary requirements of the summary judgment statute. (See *California Traditions, Inc. v. Claremont Liability Ins. Co.* (2011) 197 Cal.App.4th 410, 420; *Brown v. Ransweiler* (2009) 171 Cal.App.4th 516, 525.) Though summary judgment is improper where there is a factual issue as to the amount of damages (*Paramount Petroleum Corp. v. Superior Court* (2014) 227 Cal.App.4th 226, 243), where neither the facts nor inferences are in conflict, it is proper to resolve the issue on summary judgment. (See *Caso v. Nimrod Productions, Inc.* (2008) 163 Cal.App.4th 881, 889 [dealing with special employment relationship, normally a question of fact].) Summary judgment is improper, however, where the evidence gives rise to conflicting inferences, even where the facts are undisputed. (See *46 v. City of Mountain View* (1998) 66 Cal.App.4th 195, 219.)

In Patterson's deposition, Town's counsel asked Patterson about and presented him with payment applications reflecting BMC's work and percentages of completion during different periods of time. Patterson was shown an invoice dated November 30, 2015, leading to a back and forth between Town's counsel, Patterson and Patterson's counsel about change orders. Patterson's counsel asked Patterson whether "percentages could be off" if the scope of work in a change order was not "part of the scope of work being designated as a percentage . . . ." Patterson agreed. He continued: "And the percentage and the money, you know, was tight on the job at this point being billed, and there was old invoices due. So, you know, you—and there's correction of work. [¶] . . . [¶] . . . So we're out of whack." Patterson testified he could have written a "deductive change order for $250,000 to [BMC] at this point" but did not.[5] Town's counsel asked: "So the percentage of completion to date is basically saying, even without additional change orders, we still aren't a hundred percent complete with the original contract amount." Patterson replied, "Yeah." Town's counsel then clarified with Patterson that it was "as of January 8th, 2016" that he could have issued a deductive change order to BMC. Patterson explained he did not issue a deductive change order in October 2015 because he was "waiting—you know, are walls fixed to our standard." Patterson blamed his failure to ever issue the deductive change order on the fact every building was not drywalled and he had personal family issues.

Town's counsel then presented Patterson with a payment application for the period ending in February 29, 2016. Counsel pointed out it showed

---

[5]  A deductive change order apparently reflects a reduction in the scope of work that should reduce the contract price paid. (See, e.g., *Fassberg Construction Co. v. Housing Authority of City of Los Angeles* (2007) 152 Cal.App.4th 720, 757-758.)

20

both the trusses and rough carpentry at 96 percent completion. Patterson confirmed that he authorized the document being stamped, but that it was not notarized. Over objection, Town's counsel tried to ask Patterson whether the certification on the form—that the "work covered by this application for payment has been completed in accordance with the contract documents"—was a "true statement." Counsel then asked if this was the "last bill." At first Patterson said no, then recalled and changed his answer, also addressing the payment application: "This was the last-attempt effort to try to make everybody—well, the changes—whole and thinking that Justin [Huang, executive director for Town's parent company] and I were going to come to some understanding of how to get this caught up. Including the adjustment, including the overbuilt aspect of this. [¶] So I would say yes, *and then I would say there's too many—there's too many variables with the mess that's been created for me to vet it to tell you that this is the best that I can do at the moment to stamp this in good faith to try to get everybody reconciled. How's that.?*" (Italics added.)

Counsel asked Patterson if he realized that by certifying the payment application, he was asking for money. Patterson agreed, but said, "I also know that we're overbuilt on the job." Counsel continued:

"[Town's counsel]: Okay. So if it's overbuilt and underfunded, the conclusion is this [payment application] is inaccurate?

"[Patterson's counsel: Objection.

"[Town's counsel]: Is that correct?

"[Patterson's counsel]: Asked and answered.

"[Patterson]: *Everything's inaccurate at this point*." (Italics added.)

Counsel finally presented Patterson with the March 29, 2016 payment application, and asked: "[Y]our response to this, in terms of the accuracy or

21

inaccuracy of the certification, is the same as with respect to Exhibit 28 [the February 2016 application], correct?" Patterson responded, "Yes. . . . [¶] . . . [¶] This is when we walked off—."

Town argues we should accept Patterson's deposition testimony about BMC's incomplete work and the payment applications showing that BMC's work was only 96 percent complete as of March 25, 2016, but disregard Patterson's testimony about the accuracy of the payment applications because "[t]he meaning of any errors is for the trier of fact to discern and interpret."

" 'An issue of fact can only be created by a conflict of evidence. It is not created by . . . "cryptic, broadly phrased, and conclusory assertions" [citation], or mere possibilities [citation]. "Thus, while the court in determining a motion for summary judgment does not 'try' the case, the court is bound to consider the competency of the evidence presented." ' " (*Brown v. Ransweiler*, *supra*, 171 Cal.App.4th at pp. 525-526; *Hope Internat. University v. Superior Court* (2004) 119 Cal.App.4th 719, 739, fn. 9 ["conclusions of fact are not binding on a summary judgment motion"].) " 'It is not enough to produce just some evidence. The evidence must be of sufficient quality to allow the trier of fact to find the underlying fact in favor of the party opposing the motion for summary judgment.' " (*Andrews v. Foster Wheeler LLC* (2006) 138 Cal.App.4th 96, 108.)

We are unable to ascertain where Patterson directly testified with clarity that BMC did not complete 100 percent of its work. Town cites to the appellant's appendix for that proposition but at the cited pages, Patterson remarks the job was "out of whack" and that he could have written a deductive change order to BMC for $250,000 "at this point," which was later clarified to be in January 2016, well before March 18, 2016, which BMC

22

averred was its last day on the job. Patterson's testimony does not contradict BMC's evidence that as March 18, 2016, it had completed all work called for in its subcontract and change orders. Further, the payment application documents in the record do not permit conflicting inferences as to whether BMC's work was incomplete. The only witness in the record addressing these payment applications, Patterson, testified under oath without contradiction the applications were inaccurate. Though the payment applications contain a signed "certification,"[6] it is not made under penalty of perjury. We cannot view the payment applications in isolation and divorce them from the testimony of their signatory asserting under oath they are not accurate.

In sum, Town's evidence was insufficient to satisfy its burden of showing the existence of a triable issue of fact as to whether BMC completed 100 percent of its work.

---

[6] The certification signed by Patterson reads: "The undersigned Contractor certifies that to the best of the Contractor's knowledge, information, and belief the Work covered by this Application for Payment has been completed in accordance with the Contract Documents, that all amounts have been paid by the Contractor for Work for which previous Certificates of Payment were issued and payments received from the Owner, and that current payment shown herein is now due." Even averments made on information and belief in a sworn declaration are of no value in a summary judgment. (*Lopez v. University Partners* (1997) 54 Cal.App.4th 1117, 1124; see *Bennett v. Hibernia Bank* (1960) 186 Cal.App.2d 748, 754.)

## DISPOSITION

The judgment is affirmed.

O'ROURKE, Acting P. J.

WE CONCUR:

AARON, J.

GUERRERO, J.